David Kupetz (State Bar No. 120562)
david.kupetz@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

Shalom Jacob (Pro Hac Vice application forthcoming)
sjacob@lockelord.com
LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY  10281
Phone: (212) 415-8600 / Fax: (212) 303-2754

Donald E. Frechette (Pro Hac Vice application forthcoming)
donald.frechette@lockelord.com
LOCKE LORD LLP
20 Church Street, 20th Floor
Hartford, CT  06103
Phone: (860) 525-5065 / Fax (860) 955-1145

Attorneys for Defendant
MARICH BEIN LLC

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKSTONE LAW GROUP, PC, | ) Case No. 2:23-cv-1463 |
|               Marich Bein, | ) **DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR OSC RE: PRELIMINARY INJUNCTION** |
| vs. | ) |
| MARICH BEIN, LLC, | ) |
|               Defendant. | ) |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................4

STATEMENT OF FACTS ...................................................................................7

APPLICABLE LEGAL STANDARD ................................................................17

LIKELIHOOD OF SUCCESS ...........................................................................18

IRREPARABLE HARM .....................................................................................20

BALANCE OF HARM .......................................................................................21

PUBLIC INTEREST ..........................................................................................21

CONCLUSION...................................................................................................22

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) .....17, 18

Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052
(9th Cir. 2009) ..................................................................................................17

Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997) ...................17

Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th
Cir. 1985)..........................................................................................................18

Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010)............................17

Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982) ..............16

Regents of Univ. of Cal. v. Am.  Broad. Cos., 747 F.2d 511, 519 (9th Cir.
1984) ..................................................................................................................18

Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7
(9th Cir. 2001) ..................................................................................................17

Winter v. NRDC, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249
(2008) .................................................................................................................17

**Statutes**

Fed. R. Civ. P. 65(c). ............................................................................................18

Fed. R. Civ. P. 65(b) ............................................................................................17

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Defendant Marich Bein LLC ("**Marich Bein**"), in opposition to Plaintiff Oakstone Law Group, PC's ("**Oakstone**") *Ex Parte* Application for Temporary Restraining Order and Request for OSC re: Preliminary Injunction (the "*Ex Parte* Application"), states as follows:

## **INTRODUCTION**

1.      Oakstone is a California corporation that filed its articles of incorporation not even two months ago, on January 9, 2023, but purports to be able to provide specialized consumer protection legal services to 15,000 clients that have supposedly retained it during that short period of time.  According to Oakstone's website (www.oakstonepc.com), it employs a single attorney, Scott Eadie, a practitioner who bills himself as having, since 1983, a "practice […] focused on representation of the injured worker in [*sic*] Workers' Compensation system."[1]

2.      Marich Bein is not a law firm.  It is a limited liability company that is in the business of servicing and acquiring accounts receivable.

3.      Oakstone has filed the above-captioned action and requested issuance of a temporary restraining order as part of an ongoing scheme through which Oakstone and non-party The Litigation Practice Group PC ("**LPG**"), both law firms under the direction of a disbarred lawyer, Tony Diab ("**Diab**"), and apparently alter egos of each

---

[1]  https://www.oakstonepc.com/attorneys (retrieved Feb. 28, 2023).  Regarding Mr. Eadie, Oakstone's website further states:

> … He has represented both employers and injured workers before the Workers' Compensation Appeals Board. Mr. Eadie has represented dozens of insurance companies, as well as hundreds of inmates before the Board of Prison Terms. His clients have ranged from notorious criminals to families affected by the economic downturn in our economy. He has deposed doctors hundreds of times in order to get the most benefits for his clients.

Nothing on Oakstone's website asserts that Mr. Eadie has any experience in consumer protection.

4

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

other, are attempting to avoid LPG's contractual agreements with Marich Bein.  In particular, LPG: (a) assigned to Marich Bein the exclusive right to service all of LPG's approximately 50,000 accounts receivable with its Clients, including without limitation the right to withdraw monthly payments from the Clients' bank accounts; and (b) assigned to Marich Bein, for value, the ownership of 15,000 to 20,000 of such accounts receivable.

4.      Oakstone has not produced **_any_** documents substantiating that it has any rights with regard to any of LPG's clients or accounts.  In an apparent attempt to divert the Court's attention from this lack of proof, Oakstone states that Marich Bein did not respond to Oakstone's requests that Marich Bein produce its documents.  That is patently false.  As show by the email thread annexed as Exhibit 1 to the Declaration of Alan H. Katz ("Katz Declaration") submitted in opposition to the *Ex Parte* Application, Marich Bein offered to provide its documents if Oakstone would do the same.  Oakstone has not responded, other than that its counsel stated she was waiting for direction from Oakstone.

5.      Marich Bein's agreements with LPG predate Oakstone's existence and, to the extent necessary, have been perfected.  Marich Bein and LPG have been operating pursuant to those agreements since well before Oakstone came into existence.

6.      In furtherance of their scheme, Oakstone and LPG now claim that, *inter alia*: (a) LPG terminated contracts with its Clients; (b) LPG referred and transferred (on information and belief, for no or inadequate consideration) at least 15,000 of those Clients to Oakstone[2]; (c) Oakstone entered into "new" contracts with the 15,000 Clients; (d) LPG notified Marich Bein that Marich Bein's right to make withdrawals from the Clients' bank accounts has been terminated; (e) LPG terminated Marich

---

[2] On information and belief, LPG is referring and transferring other Clients to other law firms.

5

Bein's access to data necessary to allow Marich Bein to fully exercise the rights granted to it, and to which data Marich Bein is contractually entitled; and (f) LPG disavowed that it ever entered into any agreements with Marich Bein.

7.      Marich Bein's agreements with LPG bar LPG from taking the actions ascribed to it in the preceding paragraph.

8.      Notably, Oakstone does not allege that LPG assigned any legal services agreements or any accounts receivable to Oakstone.  Nor does Oakstone allege that Marich Bein and Oakstone have any contractual relationship whatsoever.  Yet, Oakstone claims that Marich Bein's continued operations under its agreements with LPG, agreements that Oakstone knew or should have known of at all relevant times, constitute tortious interference with Oakstone's relations with its clients.  Indeed, it is Oakstone that is tortiously interfering with contracts – Marich Bein's contracts with LPG.

9.      Marich Bein submits that a temporary restraining order should not issue here.  Oakstone has not demonstrated and cannot demonstrate that it is likely to prevail in this action.  Furthermore, to the extent that Oakstone may be an independent entity and not LPG's alter ego, which Marich Bein denies, any injury that it may be suffering is entirely of its own making and, in any event, is fully compensable by a money judgment.  And although it is unfortunate that Oakstone has put its clients in an apparently untenable position, that, too, is of Oakstone's and LPG's doing.

10.      On the other hand, it is abundantly clear that, if Marich Bein is not permitted to exercise the rights that it purchased, for substantial consideration, it will be irreparably damaged.  Oakstone acknowledges that it will dissipate the revenue that it generates from the subject clients.  It does not appear that Oakstone has, or will have, any other assets.

11.      At the same time, Marich Bein acknowledges that the clients should not be adversely affected by this dispute between Marich Bein, on the one hand, and

Oakstone and LPG, on the other hand.  Therefore, Marich Bein suggests that until further proceedings can be had to determine who is entitled to debit the accounts identified by Oakstone, that Marich Bein (and not Oakstone or itsagents) make withdrawals from such accounts and segregate the withdrawn funds in a separate bank account.

12.    Marich Bein further submits that no final relief should be granted in this matter without the joinder, by Oakstone, of LPG.

## STATEMENT OF FACTS

13.    LPG is a law firm that claims to specialize in resolution of consumer debt.  Although it claims otherwise, LPG is, in reality, run entirely by Diab, a former attorney who has been disbarred in two states following disciplinary proceedings for serious ethics violations, including stealing client funds and forging the signature of a judge.

14.    On information and belief, at times relevant to this matter, LPG had more than 50,000 active client accounts nationwide.

### The Agreements Between Marich Bein and LPG

15.    On or about September 18, 2022, Marich Bein and LPG entered into an *Assignment of Servicing Rights* ("**Assignment**")[3], pursuant to which LPG agreed, *inter alia*, as follows:

**Article I. ASSIGNMENT**

Section I.1  Assignment of Servicing Rights.  [LPG], by these presents does hereby presently,  unconditionally, absolutely and irrevocably assign, transfer, convey and set over to [Marich Bein] (it being intended by [LPG] that such assignments constitute present, absolute and unconditional

---

[3] A copy of the Assignment is annexed as Exhibit 1 to the Declaration of Hershy Deutsch (the "Deutsch Declaration") being submitted in opposition to Oakstone's *Ex Parte* Application.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

assignments and not assignments for additional security only, but such assignment shall constitute security for [LPG]'s obligations to [Marich Bein] or its affiliates), all of [LPG]'s right, title and interest in and to the Servicing Rights, including, without limitation, any right of [LPG] or any of its affiliates (whether such rights are currently existing or arising in the future) to service collection of subscription fees, return payment fees, or any other fee or payment resulting from any Customer's engagement with [LPG] or any of its affiliates, or give notices, sue for payment under the Customer contracts or to take any action at law or in equity relating to the Customer contracts.

## Article II.  SERVICING OF CONTRACTS

Section I.2 [*sic*]  Appointment as Third-Party Servicer. . . . [LPG] hereby retains [Marich Bein] to act as third-party [Marich Bein] for the Receivables . . . .

Section I.3 [*sic*]  Servicing of Receivables. . . . [LPG] agrees to provide [Marich Bein] and its subcontractors with such assistance in the servicing, collection and administration of any Receivable as may be requested by [Marich Bein] from time to time.

Section I.4 [*sic*]  Limited Power of Attorney.  [LPG] hereby irrevocably appoints and empowers [Marich Bein] as [LPG]'s true and lawful attorney-in-fact, with full power of substitution, to endorse and promptly deposit on [LPG]'s behalf any checks or other instruments made payable to

8

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

[LPG] and submitted by a Customer as payment on any Receivable, and to take any other action relating to the Receivables in [LPG]'s name and place that [Marich Bein] deems advisable and consistent with the terms of this Agreement.  This power of attorney shall be deemed to a right coupled with an interest.

*                    *                    *

## ARTICLE III.  OBLIGATIONS OF MERCHANT

Section III.1  Access to All Digital Records, Databases, and Applications.  [LPG] shall provide [Marich Bein] any information requested by [Marich Bein] with respect to its Customers and the Customer contracts.  At all times, [Marich Bein] must have unfettered access to all software applications used by [LPG], including, but not limited to, Debt Pay Pro, Snowflake, or any other databases used by [LPG] in its ordinary course of business.

*                    *                    *

Section III.3  No Impairment.  [LPG] will not take any action (including placing or allowing placement of a lien or security interest on any Purchased Receivable) or make any omission that has, individually or in the aggregate, an adverse effect on any Purchased Receivable or on [Marich Bein]'s ability to collect on any Purchased Receivable.

Section III.4  Amounts Received.  . . . [LPG] shall not in any way encourage or cause any proceeds to be paid, processed, settled or delivered to any person or account other than the [Marich Bein]'s account, and shall take all

9

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

affirmative steps at its expense and as necessary or appropriate to prevent any such occurrence from recurring. [LPG] is prohibited from instructing any Customer to pay [LPG] or any other third party on a Receivable or otherwise suggest that Customer may make a payment to [LPG] or any other third party instead of paying [Marich Bein] to satisfy its payment obligation.

*          *          *

## ARTICLE VI.  MISCELLANEOUS

Section I.7 [*sic*]  Term and Termination.  This Assignment shall commence on [September 19, 2022] and shall continue in full force and effect, until released by [Marich Bein].  [LPG] may terminate this Assignment at any time and for any reason provided that the total amount of Purchased Receivables held by [Marich Bein] and its affiliates are less than $1,000,000.00.[4]

*          *          *

Section VI.1[*sic*]  Exclusivity.  [LPG]understands and agrees that the relationship set forth in this Assignment is exclusive.  [LPG] forgoes any right to contract with other parties for the same or similar services provided by [Marich Bein] under this Assignment.

(Underscoring and bolding in original.)

16.    Since entering into the *Assignment*, Marich Bein has exercised the rights granted to it therein and has complied with the terms thereof.

---

[4]  The total amount of Purchased Receivables now held by Marich Bein is in excess of $1,000,000.00.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

17.     In addition to the *Assignment*, on or about August 18, September 21, October 6 and November 14, 2022, in return for the payment of amounts totaling in excess of $10,000,000, LPG entered into *Accounts Receivable Purchase Agreements* ("*Agreements*"),[5] pursuant to which LPG sold, assigned, transferred and delivered to Marich Bein all of LPG's right, title and interest in and to certain of LPG's client accounts ("**Purchased Accounts**"), totaling between 15,000 and 20,000 accounts. Each of the *Agreements* was executed on behalf of LPG by Daniel S. March as Managing Shareholder and also by Diab.

18.     In the *Agreements*, LPG warranted that:

      A.     LPG was conveying to Marich Bein good, valid, transferable and marketable title to all of the Purchased Accounts, free and clear of all liens; and

      B.     LPG's delivery of the Purchased Accounts to Marich Bein would not conflict with, result in any violation of, or default under, or give rise to a right of termination or modification of any obligation, or loss of any benefit, under any contract to which LPG is a party, including any assigned contract.

19.     In the *Agreements*, LPG further agreed:

      A.     To indemnify and hold Marich Bein harmless against, *inter alia*, all claims, losses, liabilities, damages, deficiencies, diminutions in value, and costs sustained by Marich Bein as a result of, arising out of, or in connection with any inaccuracy in or breach of any representation or warranty or any breach or non-fulfillment of any

---

[5]  Copies of the Assignments are annexed as Exhibits 2, 3, 4 and 5 to the Deutsch Declaration.  Because the purchase prices in the Agreements are confidential and proprietary trade secret information, they have been redacted from the annexed copies of the Agreements.  Further, because the Agreement's spreadsheets listing the Purchase Accounts contain clients' personal financial information, the spreadsheets are not included with the annexed copies.

obligation to be performed by LPG under its agreements with Marich Bein;

B.   Neither the *Agreements* nor any rights or obligations of a party thereto shall be assigned, unless to an affiliate of the assigning party, without the prior written consent of the other party; and

C.   Irreparable damage would occur if any provision of the *Agreements* was not performed in accordance with the terms thereof and that the parties would be entitled to specific performance thereof, in addition to any other remedy to which they are entitled under the *Agreements*, at law or in equity.

20.   In an abundance of caution, Marich Bein has perfected any security interests under its agreements with LPG by filing appropriate UCC financing statements.  However, such perfection is unnecessary since, under the Agreements, LPG sold the Purchased Accounts to Marich Bein.

21.   Based on the foregoing agreements, and the promises, covenants, representations and warranties therein contained, and notwithstanding that the Purchased Accounts are Marich Bein's property, Marich Bein has the right to service all of LPG's accounts and make withdrawals from all of LPG's Clients.

**LPG and Oakstone Act To Contravene Marich Bein's Rights**

22.   For months after LPG's and Marich Bein's entry into the above described *Assignment* and *Agreements*, Marich Bein serviced the Clients' accounts, using data in LPG's software systems and processing withdrawals from the Clients' bank accounts, all in accordance with the parties' contractual arrangements and without objection from LPG.

23.   However, in recent weeks LPG and Oakstone have taken actions in derogation of Marich Bein's rights as aforesaid.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

24.     On or about February 2, 2023, LPG implemented changes to its software systems so as to completely deny Marich Bein access thereto.  Notwithstanding Marich Bein's repeated protests about this breach of LPG's obligation to provide "unfettered access," LPG has not restored access.  The lack of such access is impairing Marich Bein's ability to accurately service the Clients' accounts.

25.     On or about February 6, 2023, Marich Bein received an unsigned email purporting to be from legal@lpglaw.com directing Marich Bein to cease and desist from processing payments on any of the Clients' accounts.  The email purports to disavow the *Assignment*, yet offers to discuss resolution of "this dispute."[6]

26.     On information and belief, at about the same time, most of LPG's employees were discharged from its employ, and some, including at least two lawyers, became employees of Oakstone, which had been formed only one month earlier.

27.     On February 10, 2023, Oakstone, through counsel, emailed Marich Bein a copy of a cease and desist letter that such counsel had sent to BankUnited ("***BankUnited Letter***").[7]  The *BankUnited Letter* states that: (a) Oakstone has retained certain accounts from LPG and LPG has transferred its practice to Oakstone; and (b) Oakstone terminated BankUnited's "relationship" with those accounts on or about February 2, 2023, and has withdrawn any authorization to process automatic withdrawals from any customer account.

28.     The *Assignment* prohibits LPG from taking the actions described in the *BankUnited Letter*.

29.     The *BankUnited Letter* also enclosed a 300 page listing of clients, with bank account numbers and bank routing numbers.  The list further includes thousands of accounts that are Purchased Accounts and, hence, Marich Bein's property.

---

[6] See Exhibit A-1 to the Declaration of Dongliang Jiang (the "Jiang Declaration") submitted by Oakstone in support of the *Ex Parte* Application.

[7] See Exhibit A-2 to the Declaration of Rusty O'Kane (the "O'Kane Declaration") submitted by Oakstone in support of the *Ex Parte* Application.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

30.     On February 16, 2023, Oakstone, through counsel, initiated an action (the "**BankUnited Action**") against BankUnited in the District Court of Dallas County, Texas, 192nd Judicial District, under Cause No. DC-23-02116, seeking, among other things, a temporary restraining order and temporary and permanent injunctive relief enjoining BankUnited from processing debits on the accounts on the list enclosed with the *BankUnited Letter*.[8]

31.     According to Oakstone's *Petition*, on or about January 11, 2023, two days after Oakstone was formed, an alleged secured creditor named PECC Corporation ("**PECC**") exercised remedies under an alleged promissory note and security interest.  No detail was provided concerning the debt owed to PECC, whether and how any security interest was perfected, or the manner in which remedies were exercised.  The *Petition* further asserted, as Oakstone asserts here, that LPG terminated its agreements with its clients, an action prohibited by the *Assignment*, and referred such clients to Oakstone, which is described, notwithstanding that it only recently came into existence, as a consumer protection law firm capable of servicing 15,000 customers.  Oakstone claims to have entered new legal service agreements with the 15,000 clients and to have the exclusive authority to process payments from those clients.

32.     Although there is no express statement in the *Petition* that BankUnited is processing withdrawals for Marich Bein, Oakstone clearly believed that to be the case.  However, notwithstanding that the equitable relief sought in the *Petition* would seriously impair, if not completely abrogate, Marich Bein's rights under the aforesaid agreements, Oakstone failed to name Marich Bein in the *Petition*, thus depriving Marich Bein with advance notice of its filing or a contemporaneous opportunity to be heard in connection therewith.

---

[8] A copy of Oakstone's petition ("Petition") is annexed as Exhibit 2 to the Declaration of Alan H. Katz (the "Katz Declaration") being submitted in opposition to Oakstone's *Ex Parte* Application.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

**LPG and Oakstone are Alter Egos or Oakstone is a Mere Continuation of LPG**

33.  On information and belief, the LPG-Oakstone transaction was a sham transaction, put together for no consideration between affiliated or alter ego parties, for the sole purpose of attempting to divest Marich Bein of its exclusive rights to service LPG's accounts and Marich Bein's ownership of the Purchased Accounts, accounts for which Marich Bein paid in excess of $10,000,000.

34.  Prior to January 9, 2023, Oakstone did not exist.

35.  On information and belief, at the time that the LPG-Oakstone transaction took place, allegedly on January 11, 2023, Oakstone had no ability to provide any types of legal services to 15,000 clients, much less specialized consumer protection legal services.

36.  On information and belief, much of LPG's staff, including at least two lawyers, have been transferred to Oakstone.

37.  On information and belief, Diab manages Oakstone's financial affairs, just as he has been doing for LPG.

38.  Although the California Secretary of State's records indicate that Daniel S. March is the only officer of LPG, and the *Assignment* and *Agreements* were signed by March as "Managing Shareholder," Marich Bein's dealings with LPG have been with Diab (excepting operations-related communications that have been with lower level employees).

39.  From Marich Bein's recent communications with Diab, Marich Bein believes that Diab directs Oakstone's operations.  Marich Bein's counsel asked Oakstone's counsel for the name of an Oakstone representative, and counsel professed not to recall the name of any such individual.  Further, until Oakstone filed its initial statement of information with the California Secretary of State on February 23, 2023, it was not clear whether there was any other available representative with whom an interested party could communicate.  That statement lists Scott J. Eadie, who as

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

described below is clearly not the person directing Oakstone, as CEO and Director, and Dongliang Jiang, a non-attorney, as CFO.

40.     Additionally, until approximately one to two weeks ago, Oakstone appeared to have only a single attorney, Jayde Trinh, a recent law school graduate and LPG attorney whose name remained on LPG's website.

41.     As of February 19, 2023, Oakstone's website identified a single attorney, Scott J. Eadie, as its "head attorney."  LPG's website also has a page describing Mr. Eadie.  Mr. Eadie has clearly become affiliated with LPG and Oakstone only very recently.  On information and belief, for approximately 40 years Mr. Eadie has practiced worker's compensation law at his own law firm, which is still in operation. Mr. Eadie does not appear to have the experience needed to provide consumer protection legal representation to 15,000 consumers located across the United States, much less the background to handle such a firm's financial affairs.

42.     On February 24, 2023, Marich Bein filed a complaint against LPG and Oakstone in the United States District Court for the Central District of California.[9] This action is pending before United States District Judge David O. Carter.  That action was commenced prior to the instant action pending before this Court and involves the same parties and issues.

The first-to-file rule states that "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982); The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed …." Id., 94-95 (9th Cir. 1982) (citations omitted). A district court applying the rule may transfer, stay, or dismiss the second-

[9] A copy of the complaint is annexed as Exhibit 3 to the Katz Declaration.

1    filed case. See Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997).

2    Under the first-to-file rule, the instant case should be dismissed as the second-filed

3    case.

4    ### APPLICABLE LEGAL STANDARD

5         A temporary restraining order is an "extraordinary remedy that may only be

6    awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v.

7    NRDC, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); see Earth

8    Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (discussing that plaintiffs

9    "face a difficult task in proving that they are entitled to this 'extraordinary remedy'").

10   The standard for issuing a temporary restraining order is "substantially identical" to

11   that for issuing a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush &

12   Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil

13   Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent

14   "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a

15   plaintiff must establish the "Winter" factors: (1) "he is likely to succeed on the

16   merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary

17   relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the

18   public interest."  Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046,

19   1052 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20).

20        In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale:

21   "serious questions going to the merits, and a balance of hardships that tips sharply

22   towards the plaintiff can support issuance of a preliminary injunction, so long as the

23   plaintiff also shows that there is a likelihood of irreparable injury and that the

24   injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d

25   1127, 1135 (9th Cir. 2011)  (internal quotation marks omitted). "The court may issue a

26   preliminary injunction or a temporary restraining order only if the movant gives

27   security in an amount that the court considers proper to pay the costs and damages

28

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Plaintiff has the burden of demonstrating through clear and convincing evidence the likelihood of immediate irreparable harm absent the TRO.  "[A] party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature." Regents of Univ. of Cal. v. Am.  Broad. Cos., 747 F.2d 511, 519 (9th Cir. 1984). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th Cir. 1985) (citation omitted). Even under the sliding scale approach, a plaintiff must still show a likelihood of irreparable injury. See All. for the Wild Rockies, 632 F.3d at 1135 ("'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.")

## LIKELIHOOD OF SUCCESS

43.    To obtain a temporary restraining order, Oakstone must show, as it acknowledges, that it is likely to prevail on the merits.

44.    Oakstone has not shown that it is likely to prevail on the merits.  It claims that it has documentary evidence to prove that Marich Bein no longer possesses the right to process payments for customers who have supposedly been referred by LPG to Oakstone, but it has produced nothing other than an email purporting to notify Marich Bein that its rights have been terminated and claiming that such rights never existed in the first place.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

45.     Putting aside that the email has not been properly authenticated[10] and its sender is not known, that LPG may have sent it does not mean that Oakstone is likely to prevail.

46.     The email flies in the face of *Assignment* and the *Agreements* and is of no effect whatsoever.

47.     The *Assignment*, which provides servicing rights to Marich Bein, states it cannot be terminated until a certain condition has been satisfied.  The condition has not been satisfied; Oakstone does not contend otherwise.

48.     The *Agreements* grant outright ownership of the Purchased Accounts to Marich Bein.  Approximately 4,000 of the accounts on Oakstone's list are Marich Bein's property.  Does Oakstone contend that Marich Bein may not service accounts receivable that it purchased?

49.     Further, although Oakstone asserts that in its less than two months of existence it has entered into legal representation agreements with 15,000 clients, yet it has not submitted even a single agreement for the Court's review.  Nor has it submitted any documentation showing that any of LPG's clients cancelled their agreements with LPG.[11]

50.     Indeed, Oakstone has not produced ***any*** documents substantiating that it has any rights with regard to any of LPG's clients or accounts.  In an apparent attempt to divert the Court's attention from this lack of proof, Oakstone states that Marich Bein did not respond to Oakstone's requests that Marich Bein produce its documents.  That is patently false.  As show by the email thread annexed to the Katz Declaration

---

[10] The email is "authenticated" only by a declaration of Oakstone's CFO.  The email is not a business record created by Oakstone, and Oakstone is not on its distribution list.  Further, it does not identify its sender.

[11] Further, it is not clear that LPG is even able to terminate agreements with its clients, certainly not without the clients' consent.  The form of agreement that LPG provided to Marich Bein provides that LPG may terminate only in limited circumstances, not simply "at-will."

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

as <u>Exhibit 1</u>, Marich Bein offered to provide documents if Oakstone would do the same.  Oakstone did not respond, other than by its counsel stated that she was waiting for direction from her client.

51.     In sum, Oakstone has not made, and cannot make, a showing that it is likely to prevail in this action.

## <u>IRREPARABLE HARM</u>

52.     Oakstone cannot show that it will suffer irreparable harm if a temporary restraining order is not entered.  Indeed, Oakstone has known of this conflict with Marich Bein since at least February 6, 2023, when the email purporting to terminate Marich Bein's rights was sent, and possibly since its supposed taking over of LPG's business on January 11, 2023.  Yet it is still in business.  Oakstone has not demonstrated that it will suffer irreparable harm during the relatively few additional days that would elapse before the Court could consider granting a preliminary injunction.

53.     Oakstone claims that it will lose customers, faces "incalculable" damages to its (2 month old) reputation and goodwill, and may have to close its doors if Marich Bein does not cease withdrawing funds from clients' accounts.

54.     Oakstone has an adequate remedy at law.  If Marich Bein is tortiously interfering with Oakstone's contractual or economic relations and causing damage to Oakstone – which it is not doing, such damage can be remedied by a money judgment.

55.     Marich Bein submits that this should not be viewed as a situation where a long established business might be driven into the ground.  Oakstone was formed on January 9, 2023.  Oakstone asserts that it began as a result of a January 11, 2023, exercise by LPG's secured creditor, PECC Corporation, of remedies, with Oakstone being formed in an attempt to salvage LPG's allegedly failing business, using LPG's clients, back office employees and a new figurehead (Mr. Eadie in place of LPG's Daniel March).  Marich Bein submits that Oakstone is nothing more than LPG's alter

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

ego, or perhaps its successor.  But if not, then Oakstone and its principals either knew that they were stepping into a troubled situation or were misled by Tony Diab.

## BALANCE OF HARM

56.     Oakstone asserts that it faces severe hardship if the injunction does not issue but Marich Bein "will simply be required to temporarily cease its unauthorized billing practices."

57.     Marich Bein's billing practices are fully authorized by the *Assignment* and *Agreements*, notwithstanding Oakstone's protestations to the contrary.  And while a temporary restraining order would, by its nature, cause only a temporary cessation of Marich Bein's servicing of the accounts receivable, it is more than likely that Marich Bein will not be able to recover whatever amounts Oakstone improperly withdraws from the clients' accounts during the pendency of the proposed temporary relief. Oakstone had nothing before January 9, 2023, it clearly has little if anything now, and its fortunes are unlikely to improve in the future.  Should the requested temporary restraining order issue, Marich Bein will suffer irreparable harm.

## PUBLIC INTEREST

58.     Oakstone asserts that public interest is a consideration in this case, and it is only here that it appears that the parties are in agreement.  However, Marich Bein should not have to bear the irreparable harm that will be caused to it by allowing Oakstone to withdraw funds from the clients' accounts, including especially those accounts underpinning the accounts receivable that LPG sold to Marich Bein, and exhausting such funds in operating Oakstone's business.

59.     Marich Bein suggests that, during the pendency of the temporary restraining order, it be allowed to withdraw funds from the clients' accounts and segregate such funds pending further order of the Court, and that Oakstone be ordered to continue providing services to the clients during that short period, as it supposedly has been doing since January 11, 2023, and, further, to provide Marich Bein access to

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

all software systems that Oakstone or its representatives would otherwise be using in the course of servicing such accounts.

## <u>CONCLUSION</u>

For all the foregoing reasons, Marich Bein respectfully requests that Oakstone's Application for Temporary Restraining Order and Request for OSC Re: Preliminary Injunction be denied, and that Marich Bein be granted such other and further relief as the Court deems just and proper.  In the alternative that the Court nonetheless determines to issue a temporary restraining order, a substantial bond should be required.

Dated:  February 28, 2023                            Respectfully submitted,

LOCKE LORD LLP


By: */s/ David Kupetz*
          David Kupetz
          *Attorneys for Defendant MARICH BEIN LLC*

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071