1  David Kupetz (State Bar No. 120562)
2  david.kupetz@lockelord.com
   LOCKE LORD LLP
3  300 S. Grand Avenue, Suite 2600
4  Los Angeles, CA  90071
   Telephone: (213) 485-1500
5  Facsimile: (213) 485-1200

6
7  Shalom Jacob (Pro Hac Vice application forthcoming)
   sjacob@lockelord.com
8  LOCKE LORD LLP
9  Brookfield Place
   200 Vesey Street, 20th Floor
10  New York, NY  10281
   Phone: (212) 415-8600 / Fax: (212) 303-2754
11
12  Donald E. Frechette (Pro Hac Vice application forthcoming)
   donald.frechette@lockelord.com
13  LOCKE LORD LLP
14  20 Church Street, 20th Floor
   Hartford, CT  06103
15  Phone: (860) 525-5065 / Fax (860) 955-1145

16  Attorneys for Defendant
17  MARICH BEIN LLC

18
19                 UNITED STATES DISTRICT COURT
20              CENTRAL DISTRICT OF CALIFORNIA
21

22  OAKSTONE LAW GROUP, PC,           ) Case No. 2:23-cv-1463
                                      )
23                      Marich Bein,  ) DECLARATION OF ALAN H.
24                                    ) KATZ IN OPPOSITION TO
        vs.                          ) PLAINTIFF'S *EX PARTE*
25  MARICH BEIN, LLC,                ) APPLICATION FOR TEMPORARY
26                                    ) RESTRAINING ORDER AND
                                      ) REQUEST FOR OSC RE:
27                      Defendant.    ) PRELIMINARY INJUNCTION
                                      )
28                                    )

*Locke Lord LLP*
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

1

132067212v.1

I, ALAN H. KATZ, declare:

1.      My name is Alan H. Katz.  I am over eighteen (18) years of age, competent, of sound mind, and authorized to make this declaration.  I am Of Counsel to the law firm Locke Lord LLP and a member of the Bars of the States of Louisiana, New York and Tennessee and the Bars of the United States District Courts for the Eastern, Middle and Western Districts of Louisiana and the Southern and Eastern Districts of New York.  The statements contained herein are within my personal knowledge and true and correct.

2.      Annexed hereto as Exhibit 1 is a true and correct copy of an email thread between counsel to Marich Bein LLC (Shalom Jacob and myself) and counsel to Oakstone Law Group PC (Rusty O'Kane and Alexandra Wahl).

3.      Annexed hereto as Exhibit 2 is a true and correct copy of *Plaintiff's Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief* filed February 16, 2023, in *Oakstone Law Group, PC v. BankUnited, N.A.*, Cause No. DC-23-02116, District Court of Dallas County, Texas, 192nd Judicial District.

4.      Annexed hereto as Exhibit 3 is a true and correct copy of the *Complaint* filed February 24, 2023, in *Marich Bein LLC v. The Litigation Practice Group, PC and Oakstone Law Group PC*, Case No. 8:23-cv-00339, United States District Court, Central District of California.

I declare under penalty of perjury under the laws of the United States that the foregoing is correct.  Executed this 28th day of February, 2023, at New York, New York.

_____

ALAN H. KATZ

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

2

132067212v.1

# EXHIBIT 1

**From:**              Jacob, Shalom
**Sent:**              Friday, February 24, 2023 2:05 PM
**To:**                Alexandra Wahl
**Cc:**                Katz, Alan; Frechette, Donald; Rusty O'Kane
**Subject:**           Re: [External] Oakstone Law Group and Affiliates

Ms Wahl

Thank you for the clarification. We will discuss it on our side and get back to you.

Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281
212-415-8618

On Feb 24, 2023, at 8:38 AM, Alexandra Wahl <Alex.Wahl@wickphillips.com> wrote:

**\*\* External Email -- Sender: alex.wahl@wickphillips.com \*\***

Mr. Shalom,

Rusty is in a trial today but I am available. My point is that an email agreement between attorneys for confidentiality would not suffice because it would not be binding. However, if our clients were to sign a confidentiality agreement, that would work and we could exchange documents. Obviously, there is pending litigation for related parties so that is the sensitivity here.

Please let me know if you still have questions.

Thanks,

**Alexandra Wahl**
Partner | Wick Phillips
Direct:  214.420.4664
Mobile:  214.641.0825
Alex.Wahl@WickPhillips.com

On Feb 23, 2023, at 3:08 PM, Jacob, Shalom <SJacob@lockelord.com> wrote:

Ms Wahl

Thank you for your message. We are not sure we understand your proposal.

I suggest we schedule a call so that we can discuss these issues and how they can be addressed or resolved.

I will speak to Don and get back to you with a suggested time.

Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281
212-415-8618

> On Feb 23, 2023, at 12:22 PM, Alexandra Wahl <Alex.Wahl@wickphillips.com> wrote:

**\*\* External Email -- Sender: alex.wahl@wickphillips.com \*\***

Mr. Jacob,

The concern here is that an email agreement between the parties concerning confidentiality would not truly be binding or constitute a Rule 11 as there is currently no pending litigation. We are still open to the exchange of agreements, but our clients would need to sign a basic confidentiality agreement. Please let us know if you agree (or have a different proposal) and if you have a preferred form.

Thanks,

**Alexandra Wahl**
Partner | Wick Phillips
Direct:  214.420.4664
Mobile:  214.641.0825
Alex.Wahl@WickPhillips.com

**From:** Jacob, Shalom <SJacob@lockelord.com>
**Sent:** Friday, February 17, 2023 1:39 PM
**To:** Alexandra Wahl <Alex.Wahl@WickPhillips.com>
**Cc:** Katz, Alan <akatz@lockelord.com>; Frechette, Donald <Donald.Frechette@lockelord.com>; Rusty O'Kane <rusty.okane@wickphillips.com>
**Subject:** Re: [External] Oakstone Law Group and Affiliates

Ms Wahl

Just checking back as we haven't received your response.

Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281
212-415-8618

2
05

On Feb 16, 2023, at 4:02 PM, Alexandra Wahl <Alex.Wahl@wickphillips.com> wrote:

**\*\* External Email -- Sender: alex.wahl@wickphillips.com \*\***

Mr. Jacob,

We are getting authorization.

Thanks,

**Alexandra Wahl**
Partner | Wick Phillips
Direct:  214.420.4664
Mobile:  214.641.0825
Alex.Wahl@WickPhillips.com

**From:** Jacob, Shalom <SJacob@lockelord.com>
**Sent:** Thursday, February 16, 2023 2:03 PM
**To:** Alexandra Wahl <Alex.Wahl@WickPhillips.com>
**Cc:** Katz, Alan <akatz@lockelord.com>; Frechette, Donald <Donald.Frechette@lockelord.com>; Rusty O'Kane <rusty.okane@wickphillips.com>
**Subject:** Re: [External] Oakstone Law Group and Affiliates

Ms Wahl

To avoid any misunderstanding-

We have not seen any agreements relating to your client.
Only the list that was attached to your letter to BankUnited.

We are prepared to send you our agreements and a list of the overlapping accounts. But we would like your commitment to send us your clients agreements.

Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281
212-415-8618

On Feb 16, 2023, at 11:44 AM,
Alexandra Wahl
<Alex.Wahl@wickphillips.com> wrote:

** External Email -- Sender: alex.wahl@wickphillips.com **

Mr. Jacob,

Rusty is in a deposition today. We will
agree to mutual confidentiality for
documents exchanged. Please forward
the requested documents.

Thanks,

**Alexandra Wahl**
Partner | Wick Phillips
Direct:  214.420.4664
Mobile:  214.641.0825
Alex.Wahl@WickPhillips.com

**From:** Jacob, Shalom
<SJacob@lockelord.com>
**Sent:** Thursday, February 16, 2023 8:59
AM
**To:** Rusty O'Kane
<rusty.okane@wickphillips.com>
**Cc:** Katz, Alan <akatz@lockelord.com>;
Frechette, Donald
<Donald.Frechette@lockelord.com>;
Alexandra Wahl
<Alex.Wahl@wickphillips.com>
**Subject:** Re: [External] Oakstone Law
Group and Affiliates

Rusty

Good morning.

Just checking that you received our
response to your
last message as we didn't hear back
from you yesterday.

Shalom Jacob
Locke Lord LLP
3 World Financial Center
New York NY 10281

4

212-415-8618

On Feb 15, 2023, at 2:10 PM, Rusty O'Kane <rusty.okane@wickphillips.com> wrote:

**\*\* External Email -- Sender: rusty.okane@wickphillips.com \*\***

Gentlemen,

Thank you again for the call this morning. As a follow up to our conversation, we again request (for the third time) that Marich Bein provide any proof it purchased and/or acquired a non-terminable, exclusive right to withdraw payments from the list of client accounts (attached to my letter) prior to January 11, 2023. Due to Marich Bein's continued debits of these accounts, Oakstone is unable to collect over $600,000 in fees today for legal services it rendered from those clients and continues to receive notifications of clients cancelling their subscriptions due to the double-billing. If this continues, Oakstone will be forced to fire its employees and close its doors next week. As such, this needs to be resolved today or we

will be forced to pursue court intervention.

Please let me know if you have any questions or need further documentation from us.

Thank you,
Rusty


**Rusty O'Kane**
Partner | Wick Phillips
Direct:  214.740.4039
Mobile:  302.547.7898
rusty.okane@wickphillips.com

**From:** Rusty O'Kane <rusty.okane@wickphillips.com>
**Sent:** Monday, February 13, 2023 2:34 PM
**To:** Katz, Alan <akatz@lockelord.com>
**Cc:** Alexandra Wahl <Alex.Wahl@WickPhillips.com>
**Subject:** RE: [External] Oakstone Law Group and Affiliates

Alan,

I'll respond more substantively to your letter under separate cover. In the meantime, the statements in your letter are news to me, so I wanted to reach out to make sure we were operating from the same set of facts.  Once you've had a chance to review the customer accounts I attached to my letter, we can have a more informed discussion. In

the meantime, Do you have a copy of whatever transfer document exists showing that LPG "assigned, sold and conveyed certain accounts to Marich Bein," as stated in your letter? Or that LPG gave Marich Bein the exclusive and non-cancellable right to service all LPG customer accounts? I have not seen any document to that effect, so if you have something like that, would you please send to me? In the interest of full transparency, the attached documents show that LPG terminated Marich Bein's right to process payments for the client accounts at issue on February 6, 2023. Similarly, on February 2, LPG terminated its relationship with Toni Martinez regarding these client accounts. If you have some document that says such termination and revocation was impermissible, please send to me and I will review it.

Thank you,
Rusty

**Rusty O'Kane** | Partner

Board Certified by Texas Board of Legal Specialization
*Civil Appellate Law*

3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Direct: 214.740.4039 | Mobile:302.547.7898
Fax:    214.692.6255
www.wickphillips.com

**From:** Katz, Alan <akatz@lockelord.com>
**Sent:** Monday, February 13, 2023 1:01 PM
**To:** Rusty O'Kane <rusty.okane@wickphillips.com>
**Subject:** [External] Oakstone Law Group and Affiliates

Please see the attached correspondence.

Alan H. Katz
Of Counsel
**Locke Lord LLP**
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
212-415-8509
504-909-2526 (cell)
212-812-8380 (fax)

———————————

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information, including our privacy notices and policies, visit www.lockelord.com

CONFIDENTIALITY NOTICE: This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under

applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

9

# EXHIBIT 2

FILED
2/16/2023 10:38 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

DC-23-02116

CAUSE NO. _____

| | | |
|---|---|---|
| OAKSTONE LAW GROUP, PC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | 192nd |
| BANKUNITED, N.A. | § | |
| | § | |
| *Defendant.* | § | ____ JUDICIAL DISTRICT |

### PLAINTIFF'S VERIFIED ORIGINAL PETITION;
### APPLICATION FOR TEMPORARY RESTRAINING ORDER;
### AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF

Plaintiff, OAKSTONE LAW GROUP, PC ("Oakstone" or "Plaintiff"), by and through its undersigned counsel, hereby files this Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief (the "Petition"), against Defendant BankUnited, N.A. ("BankUnited" or "Defendant"), based on the following grounds:

### I.
### INTRODUCTION

As a law firm specializing in debt collection defense, Oakstone assumed the representation of a number of clients from another law firm, the Litigation Practice Group, PC ("LPG"). To that end, LPG terminated its relationship with these clients on or about February 2, 2023 – and with it, terminated any authorizations to take automatic debits from these clients' bank accounts for the clients' monthly payments for legal services. At that time, LPG also terminated any other party's access to the CRM (customer relationship management) software LPG uses to maintain records of client payments, including the date and amount the client authorizes for payments in a given month.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 1

14

Even so, and despite instructions to cease and desist, BankUnited continues to debit Oakstone's client accounts daily, allegedly on behalf of LPG. Moreover, because BankUnited no longer has access to client payment instructions and authorizations, it causes many of Oakstone's clients to be double-billed.

These duplicate withdrawals have not only caused doubt and confusion for Oakstone's clients but also necessitated Oakstone refunding the customers' monthly payments. More importantly, because BankUnited is erroneously using payment information from prior months, numerous clients who do not have a payment due are being debited, and numerous other clients have a payment pull in a different amount than what those clients have authorized in the month of February. If this improper conduct continues, Oakstone will be unable to cover its operating expenses and will be forced to shutter its doors. As such, this suit has become necessary, and the Court must immediately enjoin BankUnited from taking automatic payments from these accounts. By this action, Oakstone seeks to stop these actions, enforce its rights, and seek redress for BankUnited's continuing and irreparable injury to Oakstone.

## II.
## DISCOVERY PLAN AND RULE 47 DISCLOSURE

1.      Pursuant to the Texas Rule of Civil Procedure 190.4, discovery in this matter will be conducted under a Level 2 Discovery Plan, subject to any Court Order expediting discovery in this matter.

2.      Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff discloses that it currently seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees. Plaintiff also seeks other non-monetary relief.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 2

**III.**
**PARTIES**

3.      Plaintiff Oakstone Law Group, PC is a company organized and existing under the laws of California and has its principal place of business located at 888 Prospect Street, Ste 200, La Jolla, CA 92037.

4.      Defendant BankUnited, N.A., is a foreign corporation organized under the laws of the State of Connecticut, with its principal place of business located at 14817 Oak Lane, Miami Lakes, Florida 33016. At all relevant times, BankUnited was authorized to and is both doing and transacting business in Texas. BankUnited may be served with process through its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

**IV.**
**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action by virtue of the relief sought herein, and because the amount in controversy exceeds the minimum jurisdictional requirements of this Court. This Court has jurisdiction over BankUnited because it is registered to do business in Texas, has meaningful ties, business relationships and/or contacts in Texas, has displayed an intent to serve the market in Texas, and is committing tortious actions within Dallas County that harm Dallas County residents.

6.      Pursuant to Section 15.001, *et seq.* of the Texas Civil Practice and Remedies Code, venue is proper in Dallas County because all or a substantial part of the events and representations giving rise to Plaintiff's claims occurred in Dallas County, as a number of Plaintiff's affected customers reside in Dallas County, Texas. *See* **Exhibit A-4.**

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 3

# V.
## FACTUAL ALLEGATIONS

7.     The Litigation Practice Group, PC ("LPG") is a law firm that provides debt relief and debt resolution services to a large portfolio of over 50,000 clients. In return, these customers signed Legal Services Agreements authorizing LPG to collect monthly payments by withdrawing directly from their accounts. LPG processes between 700 and 2,000 payments per day.

8.     On or about January 11, 2023, PECC Corporation ("PECC") exercised its remedies against LPG under a promissory note on which LPG had defaulted. PECC held a perfected, secured interest in the receivables of LPG. PECC was among the largest creditors of LPG. As a debtor to PECC, LPG was unable to continue to bear the cost of servicing the customers and terminated the Legal Services Agreements it had with the customers. The payment authorizations the customers executed as part of the Legal Services Agreement were also terminated at that time.

9.     Upon the termination of its Legal Services Agreements, LPG referred approximately 15,000 customers (the "Customers") to Oakstone Law Group, PC ("Oakstone"), a customer protection law firm capable of servicing the Customers. Oakstone helps these Customers, who are dealing with high-interest debt or bills, with legal representation against their creditors and debt collectors.

10.    Oakstone agreed to take on the servicing of these clients and received the transfer of these files. The Customers signed legal service agreements with Oakstone and authorized Oakstone, as part of these agreements, to pull monthly payments directly from the Customers' accounts. Thus, Oakstone exclusively owns all authority to process payments from the Customers, on behalf of itself and PECC. To accomplish this, Oakstone set up its own separate system of debiting the Purchased Accounts, with customer authorizations and agreements to permit the

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 4

debits. Moreover, Oakstone is actively communicating with clients to ensure the payment date and amount are actually authorized by the Customers.

11.     Shortly thereafter, LPG became aware BankUnited continued to process payments from Customers after LPG had terminated its representation of those Customers and after it had rescinded access to the CRM containing accurate data regarding authorized client payments. This led to Customers being billed twice – once by Oakstone's processor and once by BankUnited – and also led to Customers having payments pulled even though they had withdrawn their authorization for anyone, including Oakstone, to pull a payment.

12.     As such, on February 6, 2023, LPG sent a written cease and desist to Marich Bein, LLP ("Marich Bein"), demanding Marich Bein stop processing Customers' payments and withdraw any authorization or instruction to BankUnited to process automatic debits. LPG's letter clarified for Marich Bein that using old data would Customers having payments pulled in the wrong amount, on the wrong date, and on accounts where payment authorization had been withdrawn in a given month. A true and correct copy of the termination correspondence from LPG to Marich Bein is attached as **Exhibit "A-1."**

13.     BankUnited no longer has any authority to debit Customers whose relationship with LPG had been terminated and who are now represented by Oakstone, an entity with no agreement of any kind with BankUnited. Regardless, BankUnited continues to charge Customers allegedly on behalf of "LPG":

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 5

18



These erroneous "LPG" charges cause customers (like the one above) to be charged once by "LPG" (but, really, BankUnited) and again by Oakstone for their monthly legal services fee.

14.    On or about February 10, 2023, Oakstone sent further correspondence to BankUnited, reiterating any such authorizations for the Purchased Accounts were revoked and/or terminated at the same time. A true and correct copy of this correspondence is attached as **Exhibit "A-2"** (with an attached list of the Purchased Accounts attached, which will be provided to the Court *in camera* due to confidential and privileged client information), attached to **Exhibit "A,"** the Declaration of Oakstone's chief financial officer, Dougliang Jiang.

15.    Even so, BankUnited continues to complete these withdrawals from Customers' bank accounts – which amounted to hundreds of thousands of dollars and a number of customer complaints concerning improper debits. Specifically, these automatic withdrawals continue to cause Customers to have overdrafts and fees, prevent them from making other timely payments,

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 6

19

affect their credit scores, and result in Customers canceling their enrollment with Oakstone. For example, one customer wrote:



Further examples of these complaints are attached as **Exhibit "A-3."** Many of these customers reside in Dallas County. A true and correct copy of the spreadsheet of Dallas County and Texas Customers will be provided to the Court *in camera* as **Exhibit "A-4"** due to confidential and privileged client information.

16.     The double debits forced Oakstone to refund these Customers their monthly payment amounts. Further, to prevent Customers from leaving and to save their reputation and goodwill, Oakstone stopped collections from Customers because BankUnited refused.

17.     Specifically, on or about February 13, 2023, in response to Oakstone's cease and desist to BankUnited, counsel for Marich Bein issued correspondence to Oakstone asserting Marich Bein's alleged superior right to the Purchased Accounts. A true and correct copy of correspondence is attached as **Exhibit "B-1,"** attached to **Exhibit "B,"** the Declaration of Oakstone's Texas counsel, Rusty O'Kane. However, at Oakstone's request, Marich Bein failed to produce any evidence in support of its claim LPG "assigned, sold and conveyed certain accounts" to Marich Bein or evidencing LPG gave Marich Bein the exclusive and non-cancellable right to service the Purchased Accounts that would allow BankUnited to continue these withdrawals. A

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 7

20

true and correct copy of this request is attached as **Exhibit "B-2."** In any event, LPG does not have actual or apparent authority to bind Oakstone.

18.     If Oakstone is precluded from collecting its monthly charges from the Customers, Oakstone will be unable to cover its operating expenses and faces shuttering its doors as early as next week. This will result in more than 15,000 clients – many of them Dallas County residents – going without representation in court, including in ongoing lawsuits across the country.

19.     Thus, Oakstone seeks emergency court intervention to stop the double-debiting of the Purchased Accounts, refund the fees debited, and restore the relationships between Oakstone and its clients.

## VI.
## CAUSES OF ACTIONS

### COUNT ONE – DECLARATORY JUDGMENT

20.     Plaintiff repeats and realleges all prior paragraphs.

21.     Plaintiff Oakstone seeks a declaratory judgment to resolve questions concerning the respective rights, obligations, and duties of Oakstone and Defendant with respect to the Purchased Accounts.

22.     An actual case or justiciable controversy exists between Oakstone and Defendant concerning Oakstone's superior and exclusive entitlement to charge the Purchased Accounts and to the parties' prospective rights and obligations.

23.     A judgment would serve a useful purpose in clarifying and/or settling these legal issues.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 8

21

24.     Further, the issuance of declaratory relief by this Court will finalize some or all of the existing controversy between the parties and will offer relief from the parties' uncertainty concerning the Purchased Accounts and their prospective rights and obligations.

25.     By reason of the foregoing, Oakstone is entitled to a declaratory judgment establishing superior and exclusive ownership and entitlement to charge the Purchased Accounts.

26.     Therefore, Oakstone requests this Court issue declarations that:

a.     Oakstone holds sole and exclusive entitlement to debit the Purchased Accounts;

b.     BankUnited has wrongfully debited the Purchased Accounts since the Purchased Account were assumed by Oakstone; and

c.     Any prior authorization(s) granted to BankUnited to debit the customer accounts was/were properly revoked.

27.     Unless the Court makes these declarations, Oakstone will suffer considerable and continuing economic and other harm.

28.     Oakstone requests this Court award Oakstone its reasonable and necessary attorneys' fees, plus interest and costs, incurred in pursuing these declarations and for such other and further relief as this Court deems just and proper.

## COUNT TWO – TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT

29.     Plaintiff repeats and realleges all prior paragraphs.

30.     Pleading in the alternative, to the extent necessary, Oakstone has contracts with the Customers to provide legal services.

31.     Defendant knew of these contracts yet continue to intentionally interfere with them. Despite notice, Defendant continue to make automatic withdrawals from Customer accounts, and Oakstone suffered damages as a result.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 9

32.     Accordingly, Oakstone has been damaged in an amount to be determined at trial.

## COUNT THREE – APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

33.     Plaintiff repeats and realleges all prior paragraphs.

34.     Oakstone seeks a temporary restraining orderth pending this Court's ruling on a preliminary injury because BankUnited is debiting the Purchased Accounts daily, with the intent to preclude Oakstone from rightfully collecting from the Customers.

35.     Unless restrained by this Court, BankUnited will continue its improper and unlawful actions of withdrawing from the Purchased Accounts, interfering with Oakstone's relationships with Customers, and Oakstone will continue to be immediately and irreparably harmed as a result.

36.     Injunctive relief is fully warranted due to the continued harm and damages flowing from BankUnited's actions—damages that are difficult to calculate, and attempting to calculate those damages would lead to a multiplicity of actions.

37.     Customers make monthly payments to Oakstone, which usually amount to several hundred dollars per month. These customers cannot afford to have BankUnited double charge them. Many customers have complained to Oakstone these automatic withdrawals have caused their accounts to overdraft, have prevented them from making other payments, and have affected their credit scores. *See* **Exhibit A-3**. Customers are canceling their subscriptions with Oakstone as a result.

38.     The threatened harm to Oakstone outweighs the threatened harm to BankUnited. If a TRO (and later, temporary injunction) is not issued, Oakstone will lose more customers and faces a substantial threat to its reputation and the goodwill it has built with those clients. If Oakstone is

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 10

23

further precluded from collecting its monthly charges from the Customers, Oakstone will be unable to cover its operating expenses and faces shuttering its doors as early as next week.

39.     As a direct and proximate cause of BankUnited's unlawful conduct as described above, Oakstone has suffered damages that cannot be reasonably ascertained at present. Oakstone has also suffered incalculable reputational damages for which Oakstone has no adequate remedy at law. Oakstone is, therefore, entitled to an injunction enjoining BankUnited from further unlawful acts.

40.     The public interest also weighs in favor of granting a TRO and temporary injunction because that interest includes the need for protection and security from customers from being double-billed by unauthorized third parties. Customers authorize Oakstone to make these payments rely on Oakstone's reputation to appropriately and adequately make those withdrawals without issue. Due to BankUnited's conduct, Oakstone may be abruptly unable to provide legal services to these 15,000 Customers altogether. This would result in more than 15,000 clients going without representation in court, including in ongoing lawsuits across the country.

41.     Oakstone has demonstrated through this pleading, and the evidence attached hereto it will likely succeed on the merits of the case, and it will suffer immediate and irreparable injury if BankUnited and those acting in active concert or participation with it, are not immediately enjoined from its wrongful acts. By virtue of the foregoing, Oakstone has also demonstrated it has no adequate remedy at law, and a balancing of the equities favors the issuance of an injunction against BankUnited.

42.     Therefore, Oakstone is entitled to a temporary restraining order followed by temporary and permanent injunctive relief. Oakstone requests the Court issue a temporary

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 11

24

restraining order and temporary injunction, thereafter to be made permanent, immediately enjoining and restraining BankUnited, its agents, servants, employees, and attorneys, and those persons in active concert or participation with it, as follows:

(a)    Accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts without Oakstone's express written authorization; and

(b)    Taking any action to prevent Oakstone from accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts.

### COUNT FOUR -- ATTORNEYS' FEES

43.    Because of Defendant's actions, Oakstone was required to retain the undersigned attorneys and has incurred, and continues to incur, fees and expenses. Oakstone is entitled to recover payment from Defendant for its reasonable and necessary attorneys' fees under Chapter 37.009 of the Texas Civil Practice and Remedies Code.

### VII.
### CONDITIONS PRECEDENT

44.    Prior to the filing of this action, Oakstone satisfied all applicable conditions precedent for bringing this suit.

### VIII.
### JURY DEMAND

45.    Oakstone hereby demands a trial by jury on all claims so triable.

### IX.
### REQUEST FOR RELIEF

**WHEREFORE**, Oakstone requests that judgment be entered in its favor and against BankUnited and that Oakstone be granted the following relief:

A.    Enter declarations against Defendant as requested herein;

B.    Finding Defendant tortiously interfered with Oakstone's contract(s);

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 12

25

C.     A temporary restraining order and temporary injunction, thereafter to be made permanent, against BankUnited, its agents, servants, employees and attorneys, and those persons in active concert or participation with it, as follows:

      a.   Accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts without Oakstone's express written authorization; and

      b.   Taking any action to prevent Oakstone from accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts.

D.     Enter judgment against Defendant for actual damages, pre- and post-judgment interest, and attorneys' fees and costs; and

C.     Such other and further relief as requested herein and/or to which Oakstone may otherwise be entitled.

Dated:  February 16, 2023           Respectfully submitted,

                         */s/ Rusty J. O'Kane*
                         Rusty J. O'Kane
                         State Bar No. 24088149
                         *rusty.okane@wickphillips.com*
                         Alexandra W. Wahl
                         State Bar No. 24071581
                         *alex.wahl@wickphillips.com*

                         **WICK PHILLIPS GOULD & MARTIN, LLP**
                         3131 McKinney Avenue, Suite 100
                         Dallas, Texas 75204
                         (214) 692-6200 (telephone)
                         (214) 692-6255 (facsimile)

                         **ATTORNEYS FOR PLAINTIFF**

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 13

26

## VERIFICATION

STATE OF MASSACHUSETTS    )
                              ) ss.:

COUNTY OF MIDDLESEX       )

**DONGLIANG JIANG**, being duly sworn, deposes and says:

1.     I am chief financial officer of Oakstone Law Group, PC ("Oakstone" or "Plaintiff"), Plaintiff in the above-captioned action. I have read the foregoing complaint in the above-entitled cause; and the same is true to my own knowledge, except as those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true, based upon my position with Oakstone, my review of the business records of Oakstone, and/or my interviews of persons with knowledge within Oakstone.

_____
DONGLIANG JIANG

Sworn to before me this
_15_ day of February 2023

_____
Notary Public

Marc Henry Pierre Joseph
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
03/20/2026

# Exhibit "A"

CAUSE NO. _____

| | | |
|---|---|---|
| OAKSTONE LAW GROUP, PC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| BANKUNITED, N.A. | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## AFFIDAVIT OF DOUGLIANG JIANG

STATE OF MASSACHUSETTS  )
                        ) ss.:
COUNTY OF MIDDLESEX     )

**DOUGLIANG JIANG**, being duly sworn, deposes and says:

1.      My name is Dougliang Jiang. I have never been convicted of a felony, am of sound mind, competent, and authorized to make this Affidavit, the statements of which are within my personal knowledge, true, and correct.

2.      I am chief financial officer of Oakstone Law Group, PC ("Oakstone" or "Plaintiff"), Plaintiff in the above-captioned action. I respectfully submit this Affidavit in support of Plaintiff's Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief (the "Petition") against Defendant BankUnited, N.A. ("BankUnited" or "Defendant").

3.      I have read Plaintiff's Petition in the above-entitled cause. The facts stated therein are within my personal knowledge and are true and correct, based upon my position with Oakstone, my review of the business records of Oakstone, and/or my interviews of persons with knowledge within Oakstone.

4.      Upon the termination of its Legal Services Agreements, the Litigation Practice Group, PC ("LPG") referred approximately 15,000 customers (the "Customers") to Oakstone Law Group, PC ("Oakstone"), a customer protection law firm capable of servicing the Customers. Oakstone helps these Customers, who are dealing with high-interest debt or bills, with legal representation against their creditors and debt collectors.

5.      Oakstone agreed to take on the servicing of these clients and received the transfer of these files. The Customers signed legal service agreements with Oakstone and authorized Oakstone, as part of these agreements, to pull payments directly from the Customers' accounts. Thus, Oakstone exclusively owns all authority to process payments from the Customers, on behalf of itself and PECC. To accomplish this, Oakstone set up its own separate system of debiting the Purchased Accounts, with customer authorizations and agreements to permit the debits. Moreover, Oakstone is actively representing and communicating with clients to ensure the payment date and amount are actually authorized by the Customers.

6.      As such, on February 6, 2023, LPG sent a written cease and desist to Marich Bein, demanding Marich Bein stop processing Customers' payments through BankUnited and withdraw any authorization or instruction to BankUnited to process automatic debits. LPG's letter clarified that using old data will result in Customers having payments pulled in the wrong amount, on the wrong date, and on accounts where payment authorization had been withdrawn in a given month. A true and correct copy of the termination correspondence from LPG to Marich Bein is attached as **Exhibit "A-1."**

7.      BankUnited no longer has any authority to debit Customers whose relationship with LPG had been terminated and who are now represented by Oakstone, an entity with no agreement of any kind with BankUnited. Regardless, BankUnited continues to charge Customers allegedly

on behalf of "LPG." These erroneous "LPG" charges cause customers to be charged once by "LPG" (but, really, BankUnited) and again by Oakstone for their monthly legal services fee. We continue to get daily complaints from Customers with screenshots (like the one above) demanding refunds for the duplicate payments.

8.      On or about February 10, 2023, Oakstone sent further correspondence to BankUnited, reiterating any such authorizations for the Purchased Accounts were revoked and/or terminated at the same time. A true and correct copy of this correspondence is attached as **Exhibit "A-2"** (with a list of the Purchased Accounts attached, which can be provided to the Court *in camera* due to confidential and privileged client information).

9.      Even so, BankUnited continues to complete these withdrawals from Customers' bank accounts – which amounted to hundreds of thousands of dollars and a number of customer complaints concerning improper debits. Specifically, these automatic withdrawals continue to cause Customers to have overdrafts and fees, prevent them from making other timely payments, affect their credit scores, and result in Customers canceling their enrollment with Oakstone. Examples of these complaints are attached as **Exhibit "A-3."** A true and correct copy of the spreadsheet of Dallas County and Texas Customers will be provided to the Court *in camera* as **Exhibit "A-4"** due to confidential and privileged client information.

10.     The double debits forced Oakstone to refund these Customers their monthly payment amounts. Further, in an effort to prevent Customers from leaving and to save their reputation and customer goodwill, Oakstone stopped collections from Customers because BankUnited refused.

11.     Now, Oakstone continues to receive complaints from Customers and cancellations of their subscriptions. Today alone, due to BankUnited's continued debits of these accounts,

Oakstone is unable to collect over $600,000 in fees today for legal services it rendered from those Customers and continues to receive notifications of Customers cancelling their subscriptions due to the double-billing. These numbers will only multiply and prevent Oakstone from collecting any payments. If this continues, in the next week, Oakstone will be forced to fire its employees and close its doors next week. This will result in roughly 15,000 clients going without representation in court, including in ongoing lawsuits across the country and undeniable harm to Oakstone and its reputation.

12.     Thus, Oakstone seeks emergency court intervention to stop the double-debiting of the Purchased Accounts, refund the fees debited, and restore the relationships between Oakstone and its clients.

13.     Attached hereto as **Exhibit A-1** is a true and correct copy of correspondence, dated February 6, 2023, sent on behalf of the Litigation Practice Group, PC ("LPG") to Marich Bein requesting that all payment processing for clients of LPG through BankUnited cease and desist.

14.     Attached hereto as **Exhibit A-2** is a true and correct copy of correspondence, dated February 10, 2023, sent to BankUnited on behalf of Oakstone reiterating that any authorization between clients of LPG/Oakstone to BankUnited was revoked and/or terminated. Attached to this letter, Oakstone included a list of client accounts, which has been excluded from the filing for privacy and confidentiality.

15.     Attached hereto as **Exhibit A-3** are true and correct copies of examples of several client complaints about unauthorized withdrawals.

16.     Attached hereto as as **Exhibit "A-4"** is a true and correct copy of the spreadsheet of Dallas County and Texas Customers, which will be provided to the Court *in camera* due to confidential and privileged client information.

17.     In my position as an officer for Oakstone, I am a custodian of records at Oakstone, and, as such, am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. The Records attached hereto as **Exhibits A-1 through A-3** (the "Records"), respectively, are kept by Oakstone in the regular course of its business. It was the regular course of business of Oakstone for an employee or representative of Oakstone with knowledge of the act, event, condition, or opinion recorded to make the Records or to transmit information thereof to be included in such Records. These Records were (1) made as a memorandum or record of an act, transaction, occurrence or event; (2) made at the time of the act, transaction, occurrence or event, or within a

WHEREFORE, for all these reasons, Oakstone's motion for a temporary restraining order and preliminary injunction should be granted in its entirety, and Oakstone should be granted such other and further relief as is just and proper.

Executed on February 15, 2023.

DONGLIANG JIANG

Sworn to before me this
_15_ day of February 2023

Notary Public

Marc Henry Pierre Joseph
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
03/20/2026

# Exhibit "A-1"

## Fw: URGENT LPG LAW SERVICING RIGHTS | ATTN: Kevin Kurka, Daniel S March.

Legal <legal@lpglaw.com>

Mon 2/6/2023 8:20 AM

To: hd@marichbein.com hd@marichbein.com ;israel@marichbein.com <israel@marichbein.com>;max@marichbein.com <max@marichbein.com>

To Whom it May Concern -

You are hereby instructed to cease and desist any payment processing of any client of The Litigation Practice Group PC. After discussion with Daniel S. March, I have confirmed that he did not execute an Assignment of Servicing Rights Agreement with Marich Bein LLC or any other entity. Please produce the same if you believe Mr. March executed the same. Please note that any forged document has no legal force or effect, and your participation in any such forgery is actionable. LPG intends to enforce its rights to the full extent of the law.

Further, even to the extent that you mistakenly believe you possess a servicing right, such right would not permit you to withdraw money from a client on a day or in any amount *not* approved by that client. If your information is not pulled from LPG's customer relationship management program the day prior to a payment, then the information is not accurate and the payment you attempt to pull is not authorized. At present, LPG processes between 500 and 700 payment adjustments per day. There is no reasonable basis for believing that data from a prior month is accurate for payment processing in the current month. If your alleged servicing agreement contains a provision that allows you to pull payments based on historic data outside of our CRM then such provision would in any event by void as a matter of law as LPG does not have the right to grant you authority to pull a payment from a client that the client does not authorize. To be clear, a change in payment date or payment amount modifies LPG's authority to pull a payment; if your information is not up to date it is not authorized and may constitute conversion.

We are willing to discuss an amicable resolution to this dispute, which would include assurances that you would receive any payment to which you are entitled. But if you unlawfully process a payment of an LPG client then LPG will withhold any payment pending a full assessment of the damage caused by such criminal conduct, including reputational damage, and application of an offset to any amount you are allegedly owed. In addition, LPG will notify Bank United of your unlawful conduct and will file suit and seek injunctive relief against both you and Bank United. If you confirm in writing that you will not process any client payments pending discussion of a resolution, then we will not contact Bank United and will work in good faith to resolve this dispute. If you do not so confirm, LPG will contact Bank United and seek court intervention to stop your criminal conduct. Please respond forthwith.

In addition, any prior agreement with Tony Diab does not bind LPG. Any prior association between LPG and Mr. Diab has ceased and in any event Mr. Diab was never authorized to act on behalf of LPG. Any

participation that you had with Mr. Diab may constitute aiding and abetting the unauthorized practice of law, and may be actionable on both civil and criminal grounds; you should seek the advice of an attorney regarding the same.

You have been placed on notice. Govern your conduct accordingly.

Regards,

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f: 949.315.4332
www.lpglaw.com

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

# Exhibit "A-2"


**Wick Phillips**

Rusty J. O'Kane
(214) 740-4039 Direct Dial
rusty.okane@wickphillips.com
www.wickphillips.com

February 10, 2023

**VIA CMRRR 9314 8699 0430 0104 3217 91**      **VIA CMRRR 9314 8699 0430 0104 3219 51**

Rajinder P. Singh                                Kevin Malcolm
Chairman, President, and                         General Counsel
Chief Executive Officer                          BankUnited, Inc.
BankUnited, Inc.                                 14817 Oak Lane
14817 Oak Lane                                   Miami Lakes, Florida 33016
Miami Lakes, Florida 33016                       (305) 569-2000
(305) 569-2000

Re:   **Cease and Desist and Revocation of Authority for Debits on Behalf of
      Oakstone Law Group, PC and its affiliates (together, "Oakstone")**

Dear Messrs. Singh and Malcolm:

We represent Oakstone in connection with its recent retention of certain accounts from
Litigation Practice Group ("LPG"). LPG transferred its practice to Oakstone, which has taken over
servicing clients to assist in reducing and eliminating their debt. To that end, LPG terminated
BankUnited's relationship with these accounts on or around February 2, 2023. Upon termination,
LPG withdrew any authorization to process automatic debits from any customer account, and such
termination extended to Oakstone. Likewise, all Legal Services Agreements and Electronic
Payment Authorizations between BankUnited and LPG were terminated and revoked. Oakstone,
for its part, has never authorized BankUnited to debit any account on its behalf. In the event such
terminations were not previously clear, we are reiterating that any such authorizations between
clients of LPG/Oakstone and BankUnited are revoked and/or terminated. Despite this revocation,
we have learned that BankUnited continues debiting client accounts without authorization.

Please take all immediate and necessary steps to cease taking automatic payments from
any account associated with LPG or Oakstone. Attached is a spreadsheet identifying many of the
accounts in question, although BankUnited should do an independent audit to ensure its
compliance. This revocation applies to any and all future debits. These accounts total $5.2 million
per month—damages we fully intend to pursue if unauthorized debits continue to occur.

Should you refuse or fail to honor these revocations, we have been authorized to take all
available legal action, including filing a lawsuit seeking injunctive relief to stop BankUnited's
intentional disruption of Oakstone's business and interference with its customer relationships. This
letter should not be construed as a waiver of any duties, covenants, or obligations owing or owed
by any party, and nothing herein shall release or discharge you from any liability.

If you have any questions or concerns, please feel free to contact me.

**Dallas** — 3131 McKinney Avenue, Suite 500 • Dallas, Texas 75204 • 214.692.6200 • 214.692.6255 Fax
**Fort Worth** — 100 Throckmorton, Suite 1500 • Fort Worth, Texas 76102 • 817.332.7788 • 817.332.7789 Fax
**Austin** — 7004 Bee Caves Road, Bldg. 1, Suite 1100 • Austin, Texas 78746 • 512.681.3732 • 512.681.3741 Fax

39

February 10, 2023
Page 2

Sincerely,

Rusty O'Kane

cc:      hd@marichbein.com
          israel@marichbein.com
          max@marichbein.com

# Exhibit "A-2" attachment

*(to be submitted in camera)*

# Exhibit "A-3"

From: <support@oakstonepc.com>
Date: Tue, Feb 7, 2023 at 1:32 PM
Subject: Fwd: LPG charge unauthorized
To: <admin@guardianprocessing.com>
Cc: <operations@guardianprocessing.com>, <eng@guardianprocessing.com>, <wes@guardianprocessing.com>

9810 - Melissa ███████████

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/9810

> On Tue, 7 Feb at 4:32 PM , Melissa ███████████████████████ wrote:
> Here is the charge from  LPG on Feb. 6th.

Attachments:

- Screenshot_20230207_162846_Mascoma Bank.jpg

From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Date: Tue, Feb 7, 2023 at 12:04 PM
Subject: Reversal of Payment for Sharonda ▓▓▓
To: <support@oakstonepc.com>

Hello,
I was told by you all that my payments to the Litigation Practice Group were actually finished on 1/5/2023. LPG actually withdrew another $411 out of my account yesterday, and now I am overdrawn on my account and have accrued several overdraft fees due to my lack of knowledge that the payment was taken out anyway. I was told to screen shot the payment to you all to get some help getting this payment reversed. Bank United also was not able to reverse anything for me and I was directed back to the LPG group by my banking institution. Can someone please help me?

Thank you,
Sharonda
▓▓▓▓▓▓▓▓

Sent from my T-Mobile 4G LTE Device

**Menu**

## Zing
Credit Union

Mart Super Center - 4198 WAL ~              ($1...)

**FEB 6 2023**

Withdrawal Check Pay Fee                    **($33.00)**
                                            ($68.65)          ⋮

**FEB 6 2023**

Withdrawal ACH LPG ▬▬▬▬▬              **($411.09)**
▬▬▬*DIRECT PAY                              ($35.65)          ⋮

Details
━━━━━━━

**Statement Description:**
Withdrawal ACH LPG ▬▬▬▬▬▬*DIRECT PAY

**Date:**
2/6/2023

**Type:**
Debit

**FEB 6 2023**

Withdrawal Check Pay Fee LPG ▬▬▬         **($33.00)**
▬▬▬▬*DIRECT PAY                            $375.44          ⋮

**FEB 6 2023**

▬▬▬▬▬▬▬▬▬▬▬▬              ▬▬▬
                                            ▬▬▬            ⋮

**FEB 5 2023**

▬▬▬▬▬▬▬▬▬▬▬▬              ▬▬▬
▬▬ ▬▬                                       ▬▬▬            ⋮

**FEB 5 2023**

▬▬▬▬▬▬▬▬▬▬▬              ▬▬▬
▬▬▬▬▬▬▬▬▬                                   ▬▬▬            ⋮

 Gmail

**GP Admin <admin@guardianprocessing.com>**

## Fwd: Antonia Martinez-Refund
1 me age

**support@oakstonepc.com** <support@oakstonepc.com>                                         Tue, Feb 7, 2023 at 3:02 PM
Reply-To: support@oakstonepc.com
To admin@guardianproce  ing com
Cc: operations@guardianprocessing.com, eng@guardianprocessing.com, wes@guardianprocessing.com

9854 - Toni

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/9854

> On Tue, 7 Feb at 6 02 PM , Toni [redacted]                         wrote
> image png
> image png
>
> **Toni** [redacted]
>  2720 Albon Rd.
>  Maumee, OH 43537
>  *Account Receivable*
>  **Direct:** (419) 724-5031
>  **Fax:** 419-865-0368


Elizabeth Scott

Attachments:

- recording of Calls.xlsx
- Xerox Scan_01312023055527 (2).pdf

**From: Toni** ███████████████████
**Date: Tue, Feb 7, 2023 at 3:02 PM**
**Subject: Antonia** ████████ -Refund
**To:** support@oakstonepc.com <support@oakstonepc.com>





‹  Transaction Details

# -$30.00
## OD PRIVILEGE FEE
Activity Occurred on 2/6/2023

| | |
|---|---|
| Secondary Description | AVAIL BALANCE WAS $21.01 BEFORE ACH/LPG |
| Posted On | 2/6/2023 |
| Resulting Balance | -$252.90 |

**Toni** ███████████

%7<75%Fgts%Wi%
%R fzr jjETM%98:8<%
Fhhtzsy%Wjhjn{fgqj%
%Inwjhy%96>.%792:586%
%Kf}?96>2;:258;=%



From: Aaron ████████████████
Date: Mon, Feb 6, 2023 at 8:15 AM
Subject: Fwd: Oakstone Law Group PC
To: <support@oakstonepc.com>

Hello payment,

There's mistake to this month payment.
I was charged on Friday 2/3/23 & Monday 2/6/23. Please advise

Processing

ACH HOLD Monthly Legal S
Monthly Le ON 02/06

Processing

Feb 3, 2023

LPG ███████████
DES:DIRECT PAY
ID:████████████
INDN:████████████
ID:██████████

Sent from my iPhone

On Feb 2, 2023, at 3:07 PM, Oakstone Law Group PC <support@oakstonepc.com> wrote:



Hi Aaron  !

Welcome to Oakstone Law Group! Thank you for entrusting us to work with you to achieve your goal of financial freedom.

As part of the transition, please authenticate your payment method using the link here:

Link

Please be advised that you won't be charged until your normal scheduled payment as part of the original legal services agreement.

Please contact us at +1858-330-3009 if you have any questions or email us at support@oakstonepc.com

Thank You!

Support Team,

Oakstone Law Group

From: Teresa ███████████████████
Date: Wed, Feb 8, 2023 at 9:32 AM
Subject: Overdraft fee and double charge
To: support@oakstonepc.com <support@oakstonepc.com>

Get Outlook for iOS

🔍 keyword, amount, or mm/dd/y...  📅

## Feb 7

MONTHLY
LEGAL SERV
WWW.OAKSTONEPCA                    **-$355.73**




## Feb 6

ACH Transaction -


ACH Transaction -


## Feb 3

ACH Transaction - LPG
███████████ DIRECT          **-$355.73**
PAY

## Feb 2

keyword, amount, or mm/dd/y...

**Feb 7**

Overdraft Protection Fee          -$20.00

POS Debit - ▮▮▮ -
                    MONTHLY
LEGAL SERV          -$355.73
WWW.OAKSTONEPCA

**Feb 6**

ACH Transaction -

▮▮▮▮tion -

From: **Linda** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Date: Fri, Feb 3, 2023 at 2:46 PM
Subject: Re: Oakstone Law Group PC
To: Oakstone Law Group PC <oakstonelawgrouppc+a3ubsh7@guardianprocessing.freshworksmail.com>,
support@oakstonepc.com <support@oakstonepc.com>


Re: Linda ▮▮▮▮▮▮▮▮▮▮

Good evening. I'm glad I received a phone call letting me know your company took over my account.

I hope LPG transfers the Feb 2023 payment to you because I don't have any available funds to make a double payment.

I also hope you actually have someone that replies to emails and texts. Someone that does things. I've seen nothing but my score go from the mid 500's down into the 400's. So bad I had to have my friend purchase a car in her name and me drive and insure/ make payments. No discussion, guidance, nothing. In this mess because of my husband. He can't have anything in his name but sure had no trouble running my name up.

Not that I didn't try to contact LPG, never a reply. Or the generic contact us at....

Thanks for listening.

Linda ▮▮▮▮▮

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

From: Oakstone Law Group PC <support@oakstonepc.com>
Sent: Friday, February 3, 2023 2:37:29 PM
To: Linda ▮▮▮▮▮▮▮▮▮▮▮▮
Subject: Oakstone Law Group PC



Hi Linda  !

Welcome to Oakstone Law Group! Thank you for entrusting us to work with you to achieve your goal of financial freedom.

As part of the transition, please authenticate your payment method using the link here:

Link

Please be advised that you won't be charged until your normal scheduled payment as part of the original legal services agreement.

Please contact us at +1858-330-3009 if you have any questions or email us at support@oakstonepc.com

Thank You!

Support Team,

Oakstone Law Group

From: Jeffrey ███████████████████████ ──
Date: Fri, Feb 10, 2023 at 12:37 PM
Subject: Double charged on monthly payment
To: Support@oakstonepc.com <Support@oakstonepc.com>


My name is Jeffrey ███████ and I was recently charged twice for my February services with the Litigation Practice
Group
Feb. 6th 383.12
Feb. 7th 383.12
I am enclosing copies of my bank statements for the days of occurrence.
I would kindly appreciate a refund of 383.12 for the overcharged.
Overdraft fees are now covered.
Thank you for your attention to this matter,  I cannot afford to pay all my bills this month,  because of this error.



**12:22**

← **Account History**

FEB 06, 2023

## External Withdrawal LPG



███████████ - DIRECT PAY

FEB 06, 2023

FEB 05, 2023



FEB 05, 2023



## Overdraft Protection Deposit

FEB 07, 2023

## External Withdrawal LPG

██████████████ - Legal Serv LPG
███████████

FEB 07, 2023



Point Of Sale Withdrawal TOWER

Sent from Yahoo Mail on Android

From: Kathy █████████████████

Date: Wed, Feb 8, 2023 at 10:17 AM

Subject: Re: double payment taken

To: Oakstone Law Group PC <support@oakstonepc.com>



## Account History

ACH Withdrawal / LPG

-$353.39

DIRECT PAY



# FREE CHECKING ▮▮▮

Available        **$318.02**

Current          $318.02

**SHOW DETAILS**

## Pending

*ACH Withdrawal /*
*Monthly Legal*
*Se* ▮▮▮▮▮
*Monthly Le WEB*
▮▮▮▮▮

*PENDING*

**-$353.39**

## Posted

sorry i only know how to do it this way. your looking at the $353 amount. Thanks for you immediate attention on this matter.

Have a smiley day!
Kathy E

Ts%\ ji𝕂jg%-𝕓7578%fy%5%>%R 𝕓fpxytsj%f| %wtzu%UH%
Axzuutw𝕓 tfpxytsjuh3htr C%| wtyj%

Hi Kathy

We are more than happy to provide further assistance on this matter, please email a reflection of the charges to support@oakstonepc.com. Please get in touch with us if you have any questions or concerns. Our phone number is (858) 330-3009 and our hours of operations are Monday to Friday, from 6 am - 6 pm PST.

On Wed, 8 Feb at 2:10 AM , Kathy                                        wrote:
hi, it appears you guys are trying to take another payment out of my banking account. fix this asap please so I don't get a NSF charge or I'll expect you to cover any and all that may occur.

Have a smiley day!
Kathy E

From: <support@oakstonepc.com>
Date: Fri, Feb 10, 2023 at 1:31 PM
Subject: Fwd: Double payment
To: <admin@guardianprocessing.com>
Cc: <operations@guardianprocessing.com>, <eng@guardianprocessing.com>, <wes@guardianprocessing.com>

10393 - Roger ▮ ()

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/10393

    On Fri, 10 Feb at 4:31 PM , Roger ▮                              wrote:
    Need one of the payments to go back in my acct put me in negative  and I also paid the draft fees

Attachments:

   • 20230210_095603.jpg

From: support@oakstonepc.com
Date: Friday, February 10 2023 at 1:24 PM PST
Subject: Fwd: Nicole ▮▮▮▮ refund request
To: admin@guardianprocessing.com
Cc: operations@guardianprocessing.com, eng@guardianprocessing.com, wes@guardianprocessing.com

10391 - Nicole ▮▮▮▮▮ 0

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/10391

On Fri, 10 Feb at 4:24 PM , Nicole ▮▮▮▮▮▮▮▮ wrote:

Attachments:

• Screenshot 20230210 143539 Carolina Foothills.jpg

From: **Sherri** ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮
Date: Tue, Feb 7, 2023, 5:25 PM
Subject: Possible refund
To: <support@oakstonelawpc.com>

I hope this works.  My internet is not working so I couldn't take a picture that way.

I am on disability and taking that money out every month was killing me.

Sherri



Attachments:

- 20230207_171717.jpg

Please take a look at ticket #10115 raised by W. F. K. H. ███████████

On Thu, 9 Feb at 11:26 AM , W. F. K. H. ███████████ wrote:
PLEASE REFUND TRANSACTION ERROR. MY ACCOUNT IS OVERDRAFT

Attachments:

- Screenshot_20230209_111458_Wells Fargo.jpg

Please take a look at ticket #10118 raised by Charles ███ ████████████

On Thu, 9 Feb at 11:58 AM , Charles ███ ████████████████ wrote:
I understand my account was sold to Oakstone Law Group. You took an unauthorized payment of $819.25 from my account on 2-7-23. My payment needs to be refunded to my account. Payment to Oakstone should be $694.25.
Please refund my payment promptly, so Oakstone can receive their payment.

Charles ███

Attachments:

- LPG payment 2-7-23.pdf

1

Please take a look at ticket #10363 raised by LINDA ████████████████████████



On Fri, 10 Feb at 2:43 PM , LINDA ████ ██████████████████ wrote:

Begin forwarded message:

**From:** LINDA ████ ██████████████████
**Date:** February 9, 2023 at 10:21:20 AM EST
**To:** support@lpglaw.com
**Subject: Monthly payment**

As you can see from my email, I took a screenshot of my checking account that you guys took my monthly payment twice this month and I need that money put back into my account, I still have to pay my car note. By taking my monthly payment twice you have made my account negative. Please take care of this matter today so I can pay my car note! I have tried sending multiple emails and calls that after 10 minutes on hold the call drops. I need this taken care of today!!!

# Exhibit "A-4"

*(to be submitted in camera)*

# Exhibit "B"

CAUSE NO. _____

| | | |
|---|---|---|
| OAKSTONE LAW GROUP, PC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| BANKUNITED, N.A. | § | |
| | § | |
| *Defendant.* | § | ____ JUDICIAL DISTRICT |

## AFFIDAVIT OF RUSTY O'KANE

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) ss.: |
| COUNTY OF DALLAS | ) |

**RUSTY O'KANE**, being duly sworn, deposes and says:

1.      My name is Rusty O'Kane. I am over eighteen (18) years of age, competent, of sound mind, and authorized to make this affidavit. The statements contained herein are within my personal knowledge and true and correct.

2.      I am a partner with the law firm of Wick Phillips Gould & Martin LLP ("Wick Phillips"), and counsel for Oakstone Law Group, PC ("Oakstone" or "Plaintiff"), Plaintiff in the above-captioned action. I make this affidavit in support of Plaintiff's Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief (the "Petition") against Defendant BankUnited, N.A. ("BankUnited") (collectively, "Defendants").

3.      I am an attorney at law duly admitted and licensed to practice before the courts of the State of Texas and have been so licensed since November 2013. I am also admitted and licensed to practice before the courts of the State of Illinois and have been so licensed since December 2010. In addition, I am licensed to practice in the United States Court of Appeals for the Fifth

Circuit; the United States District Courts for the Northern, Eastern, Southern, and Western Districts of Texas; and the United States District Court for the Northern District of Illinois. In addition, I am certified by the Texas Board of Legal Specialization in Civil Appellate Law.

4.      Attached to the Complaint as **Exhibit A-2** is a true and correct copy of correspondence, dated February 10, 2023, I sent to BankUnited on behalf of Oakstone reiterating that any authorization between clients of LPG/Oakstone and BankUnited was revoked and/or terminated. Attached to my letter, I included a list of Oakstone's client accounts, which has been excluded from the filing for privacy and confidentiality.

5.      Attached hereto as **Exhibit B-1** is a true and correct copy of correspondence, dated February 13, 2023, I received from counsel for Marich Bein, LLC.

6.      Attached hereto as **Exhibit B-2** is a true and correct copy of email correspondence, dated February 13-15, 2023, I sent to counsel for Marich Bein, LLC requesting documentation of any alleged transfer to LPG to Marich Bein, LLC and any evidence of an exclusive and non-cancellable right to service customer accounts. To date, I have not received any further written response to this email.

7.      In my position as an attorney for Wick Phillips, I am a custodian of records at Wick Phillips, and, as such, am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. The Records attached hereto as **Exhibits A-2, B-1 and B-2** (the "Records"), respectively, are kept by Wick Phillips in the regular course of its business. It was the regular course of business of Wick Phillips for an employee or representative of Wick Phillips with knowledge of the act, event, condition, or opinion recorded to make the Records or to transmit information thereof to be included in such Records.

8.      These Records were (1) made as a memorandum or record of an act, transaction, occurrence or event; (2) made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter; (3) kept in the ordinary course of a regularly conducted business activity; and (4) it was a regular practice of that business to make such a record.

9.      The Records produced or otherwise created or kept by Wick Phillips, including myself, are true and correct copies of the originals or exact duplicates of the originals. As custodian of records for Wick Phillips, I hereby certify that the referenced documents reflect true and correct copies of the Records listed above.

WHEREFORE, for all these reasons, and those included in the Complaint, Oakstone's

motion for a temporary restraining order and preliminary injunction should be granted in its

entirety, and Oakstone should be granted such other and further relief as is just and proper.

Executed on February 15, 2023.

RUSTY O'KANE

Sworn to before me this
15 th day of February 2023

Notary Public

LASHUNDRA GARLON
Notary Public, State of Texas
Comm. Expires 10-04-2025
Notary ID 133368960

# Exhibit "B-1"



Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone:  212-415-8600
Fax:  212-303-2754
www.lockelord.com

Shalom Jacob
Direct Telephone:  212-415-8618
sjacob@lockelord.com

February 13, 2023

By Email and FedEx:

Rusty J. O'Kane, Esq.
Wick Phillips
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204

Re:     Oakstone Law Group, PC and Affiliates ("Oakstone")

Dear Mr. O'Kane:

We represent Marich Bein LLC ("Marich Bein") and write concerning your February 10, 2023 letter to BankUnited, Inc.

To the extent that the allegations in your letter are directed against Marich Bein, they are incorrect and/or irrelevant.

Be advised that Litigation Practice Group ("LPG") assigned, sold and conveyed certain accounts to Marich Bein (the "Assigned Accounts").  The Assigned Accounts are the exclusive property of Marich Bein.  A review of the account list attached to your letter is ongoing.  However, at this point it is clear that many of the accounts therein are Assigned Accounts that are the exclusive property of Marich Bein.

Be further advised that LPG assigned to Marich Bein the exclusive right to service not just the Assigned Accounts but all LPG accounts.  The assignment prohibited LPG from transferring its accounts and included the exclusive right to debit LPG's customers' bank accounts.  Oakstone must immediately cease and desist from debiting the Assigned Accounts and all other LPG accounts and turn over to Marich Bein for further handling all funds that Oakstone may have been obtained in connection with such accounts.  Further, should Oakstone have caused or hereafter cause any customer's bank account to be double debited, Oakstone will be responsible for any damages that any customer may suffer.

Marich Bein demands that Oakstone immediately retract your letter to BankUnited, Inc. and that you make appropriate inquiry of Oakstone.  If Oakstone disagrees with any of the foregoing, provide us with documentation to support its position.

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

78

Rusty J. O'Kane
February 10, 2023
Page 2

To the extent your actions interfere with the lawful actions of Marich Bein, it reserves all rights, at law or in equity, to pursue appropriate redress.  Govern yourself accordingly.

Very truly yours,

Shalom Jacob

# Exhibit "B-2"

**Alexandra Wahl**

| | |
|---|---|
| **From:** | Rusty O'Kane |
| **Sent:** | Wednesday, February 15, 2023 1:10 PM |
| **To:** | Katz, Alan; Frechette, Donald; Jacob, Shalom |
| **Cc:** | Alexandra Wahl |
| **Subject:** | RE: [External] Oakstone Law Group and Affiliates |

Gentlemen,

Thank you again for the call this morning. As a follow up to our conversation, we again request (for the third time) that Marich Bein provide any proof it purchased and/or acquired a non-terminable, exclusive right to withdraw payments from the list of client accounts (attached to my letter) prior to January 11, 2023. Due to Marich Bein's continued debits of these accounts, Oakstone is unable to collect over $600,000 in fees today for legal services it rendered from those clients and continues to receive notifications of clients cancelling their subscriptions due to the double-billing. If this continues, Oakstone will be forced to fire its employees and close its doors next week. As such, this needs to be resolved today or we will be forced to pursue court intervention.

Please let me know if you have any questions or need further documentation from us.

Thank you,
Rusty


**Rusty O'Kane**
Partner | Wick Phillips
Direct:  214.740.4039
Mobile:  302.547.7898
rusty.okane@wickphillips.com

**From:** Rusty O'Kane <rusty.okane@wickphillips.com>
**Sent:** Monday, February 13, 2023 2:34 PM
**To:** Katz, Alan <akatz@lockelord.com>
**Cc:** Alexandra Wahl <Alex.Wahl@WickPhillips.com>
**Subject:** RE: [External] Oakstone Law Group and Affiliates

Alan,

I'll respond more substantively to your letter under separate cover. In the meantime, the statements in your letter are news to me, so I wanted to reach out to make sure we were operating from the same set of facts.  Once you've had a chance to review the customer accounts I attached to my letter, we can have a more informed discussion. In the meantime, Do you have a copy of whatever transfer document exists showing that LPG "assigned, sold and conveyed certain accounts to Marich Bein," as stated in your letter? Or that LPG gave Marich Bein the exclusive and non-cancellable right to service all LPG customer accounts? I have not seen any document to that effect, so if you have something like that, would you please send to me? In the interest of full transparency, the attached documents show that LPG terminated Marich Bein's right to process payments for the client accounts at issue on February 6, 2023. Similarly, on February 2, LPG terminated its relationship with Toni Martinez regarding these client accounts. If you have some document that says such termination and revocation was impermissible, please send to me and I will review it.

Thank you,
Rusty



**Rusty O'Kane** | Partner

Board Certified by Texas Board of Legal Specialization
*Civil Appellate Law*

3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Direct: 214.740.4039 | Mobile: 302.547.7898
Fax:    214.692.6255
www.wickphillips.com



---

**From:** Katz, Alan <akatz@lockelord.com>
**Sent:** Monday, February 13, 2023 1:01 PM
**To:** Rusty O'Kane <rusty.okane@wickphillips.com>
**Subject:** [External] Oakstone Law Group and Affiliates

Please see the attached correspondence.

Alan H. Katz
Of Counsel
**Locke Lord LLP**
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
212-415-8509
504-909-2526 (cell)
212-812-8380 (fax)



---

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information, including our privacy notices and policies, visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# EXHIBIT 3

1    David Kupetz (State Bar No. 120562)
2    david.kupetz@lockelord.com
     LOCKE LORD LLP
3    300 S. Grand Avenue, Suite 2600
     Los Angeles, CA 90071
4    Telephone: (213) 485-1500
5    Facsimile: (213) 485-1200

6    Shalom Jacob (*Pro Hac Vice* application forthcoming)
7    sjacob@lockelord.com
     LOCKE LORD LLP
8    Brookfield Place
9    200 Vesey Street, 20th Floor
     New York, NY 10281
10   Telephone: (212) 415-8600

11
12   Attorneys for Plaintiff
     MARICH BEIN LLC
13

14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA

16   MARICH BEIN LLC,                    )  Case No.
                                         )
17                    Plaintiff,         )  **COMPLAINT FOR:**
                                         )  **1. Breach of Contract;**
18        vs.                            )  **2. Intentional Interference with**
                                         )     **Contractual Relations;**
19                                       )  **3. Conversion;**
20   THE LITIGATION PRACTICE GROUP, PC   )  **4. Avoidance and Recovery of**
     and OAKSTONE LAW GROUP PC,          )     **Fraudulent Transfers;**
21                                       )  **5. Declaratory Relief; and**
                                         )  **6. Temporary Restraining Order,**
22                    Defendants.        )     **and Preliminary and Permanent**
                                         )     **Injunctions**
23                                       )
                                         )
24                                       )
                                         )
25                                       )  **JURY TRIAL DEMANDED**
                                         )
26                                       )
27   ====================================)

28

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

84        1

Plaintiff Marich Bein LLC ("**Plaintiff**"), demanding a jury trial for any issues triable by a jury, alleges:

## NATURE OF THE CASE

1.    This is an action for damages and injunctive relief by which Plaintiff seeks to enforce, and to enjoin defendants from interfering with, Plaintiff's lawful exercise of rights and privileges granted to it by defendant The Litigation Practice Group PC ("**LPG**").  LPG bills itself as a law firm that, among other things, assists consumers who may be experiencing financial difficulties in obtaining debt relief. LPG's clients ("**Clients**") enter legal services agreements pursuant to which they authorize a series of monthly withdrawals to be made from their bank accounts. Plaintiff, which is not a law firm, is in the business of servicing and purchasing accounts receivable.

2.    This action arises from an ongoing scheme through which LPG and defendant Oakstone Law Group, PC ("**Oakstone**"), both law firms under the direction of a disbarred lawyer, Tony Diab ("**Diab**"), are attempting to avoid LPG's contractual agreements with Plaintiff pursuant to which LPG: (a) assigned to Plaintiff the exclusive right to service all of LPG's approximately 50,000 accounts receivable with its Clients, including without limitation the right to withdraw monthly payments from the Clients' bank accounts; and (b) assigned to Plaintiff, for value, the ownership of 15,000 to 20,000 of such accounts receivable.

3.    In furtherance of the scheme, on information and belief, LPG has purported to, *inter alia*: (a) terminate contracts with at least 25,000 of its Clients; (b) referred and transferred, for no or inadequate consideration, at least 15,000 of those Clients to Oakstone (a newly organized law firm that is, on information and belief, LPG's alter ego)[1]; (c) assisted Oakstone in entering into "new" contracts with the Clients; (d) notified Plaintiff that Plaintiff's rights to the make withdrawals from the

---

[1] On information and belief, LPG is referring and transferring other Clients to other law firms.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Clients' bank accounts has been terminated; (e) terminated Plaintiff's access to data necessary to allow Plaintiff to fully exercise the rights granted to it, and to which data Plaintiff is contractually entitled; and (f) disavowed LPG's agreements with Plaintiff.

4.     Oakstone has threatened to withdraw payments itself from Clients' accounts, an action which, if carried out, would contravene Plaintiff's contractual rights and result in double withdrawing from such accounts by Oakstone.  Such actions would thus not only interfere with Plaintiff's ability to exercise the rights it obtained from LPG but, of equal importance, would also impose hardships on the Clients, many of whom are, as evidenced by their retention of LPG in the first instance, already financially stressed.  In addition to the obvious deleterious financial consequences, such double-withdrawals will also result in demands for refunds from the Clients, the likely cancellation of their legal services agreements, and a withdrawal of any authorization by them to withdraw funds from their bank accounts.

5.     Moreover, Oakstone has sent cease and desist letters to one or more banks, notifying such banks of the above-described actions and demanding that such banks cease and desist from processing debits on the Clients' bank *unless* those debits have been initiated by Oakstone or others acting at Oakstone's direction.  Indeed, in at least one instance, Oakstone has also filed a lawsuit against a bank, BankUnited, N.A. ("**BankUnited**"), seeking temporary and permanent injunctive relief barring BankUnited from processing withdrawals on the Clients' bank accounts other than those consented to by Oakstone.  Plaintiff was not made a party to that suit, and the same appears to reflect an effort by Oakstone to, in effect, adjudicate Plaintiff's rights in and to the said accounts without providing any advance notice to Plaintiff, or any opportunity to be heard, in opposition.

6.     The wrongful coordinated actions of LPG and Oakstone are causing damage, including irreparable damage, to Plaintiff.  Plaintiff has no adequate remedy at law by which it may obtain redress for the harm caused by LPG and Oakstone's actions. Therefore, Plaintiff seeks recovery of damages and this Court's declaration of

Plaintiff's contractual rights and entry of orders enjoining Defendants from interfering with Plaintiff's exercise of such rights.

## PARTIES

7.    Plaintiff is a limited liability company organized under the laws of the state of New York.  Plaintiff's sole member is Hershy Deutsch.  He is a citizen and resident of the state of New Jersey.  Plaintiff's principal place of business is located in the state of New York.

8.    Defendant LPG is a corporation organized under the laws of the state of California.  According to the records of the California Secretary of State, LPG's principal place of business is located in Tustin, California.  Daniel S. March ("**March**") is LPG's Director, CEO, CFO and Secretary.  LPG's website and its agreements with Plaintiff further state that March is LPG's Managing Shareholder.

9.    Defendant Oakstone is a newly formed corporation organized under the laws of the state of California.  Oakstone's initial filing with the California Secretary of State was made on January 9, 2023.  Oakstone's principal place of business is in La Jolla, California.

10.    On information and belief, at all times relevant to this Complaint, LPG and Oakstone were co-conspirators, agents, servants, employees, alter egos, successors-in-interest, subsidiaries, affiliated companies or corporations, and joint ventures of each other, and were, as such, acting within the course, scope, and authority of each other.  Further, on information and belief, each of LPG and Oakstone acted in concert with, and with the consent of, each other, and each of them ratified or agreed to accept the benefits of the conduct of the other.

## JURISDICTION AND VENUE

11.    For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the state of New Jersey, and defendants are citizens of the state of California.  The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to the claims stated herein occurred at LPG's office in Tustin, California, within this judicial district.

13.     Defendants, both California corporations with their principal places of business in such state, are subject to this Court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

14.     LPG is a law firm that claims to specialize in resolution of consumer debt.  Although it claims otherwise, LPG is, in reality, run entirely by Diab, a former attorney who has been disbarred in two states following disciplinary proceedings for serious ethics violations, including stealing client funds and forging the signature of a judge.

15.     On information and belief, at times relevant to this complaint, LPG had more than 50,000 active client accounts nationwide.

16.     On or about September 18, 2022, Plaintiff and LPG entered into an *Assignment of Servicing Rights* ("**Assignment**"), pursuant to which LPG agreed, *inter alia*, as follows:

**Article I. ASSIGNMENT**

Section I.1  Assignment of Servicing Rights.  [LPG], by these presents does hereby presently,  unconditionally, absolutely and irrevocably assign, transfer, convey and set over to [Plaintiff] (it being intended by [LPG] that such assignments constitute present, absolute and unconditional assignments and not assignments for additional security only, but such assignment shall constitute security for [LPG]'s obligations to [Plaintiff] or its affiliates), all of [LPG]'s right, title and interest in and to the Servicing Rights, including, without limitation, any right of [LPG] or

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

any of its affiliates (whether such rights are currently existing or arising in the future) to service collection of subscription fees, return payment fees, or any other fee or payment resulting from any Customer's engagement with [LPG] or any of its affiliates, or give notices, sue for payment under the Customer contracts or to take any action at law or in equity relating to the Customer contracts.

## Article II.  SERVICING OF CONTRACTS

Section I.2 [*sic*]  Appointment as Third-Party Servicer.  . . . [LPG] hereby retains [Plaintiff] to act as third-party [Plaintiff] for the Receivables . . . .

Section I.3 [*sic*]  Servicing of Receivables.  . . . [LPG] agrees to provide [Plaintiff] and its subcontractors with such assistance in the servicing, collection and administration of any Receivable as may be requested by [Plaintiff] from time to time.

Section I.4 [*sic*]  Limited Power of Attorney.  [LPG] hereby irrevocably appoints and empowers [Plaintiff] as [LPG]'s true and lawful attorney-in-fact, with full power of substitution, to endorse and promptly deposit on [LPG]'s behalf any checks or other instruments made payable to [LPG] and submitted by a Customer as payment on any Receivable, and to take any other action relating to the Receivables in [LPG]'s name and place that [Plaintiff] deems advisable and consistent with the terms of this Agreement.  This power of attorney shall be deemed to a right coupled with an interest.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

*          *          *

## ARTICLE III.  OBLIGATIONS OF MERCHANT

Section III.1 Access to All Digital Records, Databases, and Applications.  [LPG] shall provide [Plaintiff] any information requested by [Plaintiff] with respect to its Customers and the Customer contracts.  At all times, [Plaintiff] must have unfettered access to all software applications used by [LPG], including, but not limited to, Debt Pay Pro, Snowflake, or any other databases used by [LPG] in its ordinary course of business.

*          *          *

Section III.3 No Impairment.  [LPG] will not take any action (including placing or allowing placement of a lien or security interest on any Purchased Receivable) or make any omission that has, individually or in the aggregate, an adverse effect on any Purchased Receivable or on [Plaintiff]'s ability to collect on any Purchased Receivable.

Section III.4 Amounts Received.  . . . [LPG] shall not in any way encourage or cause any proceeds to be paid, processed, settled or delivered to any person or account other than the [Plaintiff]'s account, and shall take all affirmative steps at its expense and as necessary or appropriate to prevent any such occurrence from recurring. [LPG] is prohibited from instructing any Customer to pay [LPG] or any other third party on a Receivable or otherwise suggest that Customer may make a payment to [LPG] or any other third party instead of paying [Plaintiff] to satisfy its payment obligation.

7

\*     \*     \*

**ARTICLE VI.  MISCELLANEOUS**

Section I.7 [*sic*]  Term and Termination.  This Assignment shall commence on [September 19, 2022] and shall continue in full force and effect, until released by [Plaintiff].  [LPG] may terminate this Assignment at any time and for any reason provided that the total amount of Purchased Receivables held by [Plaintiff] and its affiliates are less than $1,000,000.00.[2]

\*     \*     \*

Section VI.1[*sic*]  Exclusivity.  [LPG]understands and agrees that the relationship set forth in this Assignment is exclusive.  [LPG] forgoes any right to contract with other parties for the same or similar services provided by [Plaintiff] under this Assignment.

(Underscoring and bolding in original.)

17.     Since entering into the *Assignment*, Plaintiff has exercised the rights granted to it therein and has complied with the terms thereof.

18.     In addition to the *Assignment*, on or about August 18, September 21, October 6 and November 14, 2022, in return for the payment of amounts totaling in excess of $10,000,000, LPG entered into *Accounts Receivable Purchase Agreements* ("***Agreements***") pursuant to which LPG sold, assigned, transferred and delivered to Plaintiff all of LPG's right, title and interest in and to certain of LPG's client accounts ("**Purchased Accounts**"), totaling between 15,000 and 20,000 accounts.  Each of the *Agreements* was executed on behalf of LPG by Daniel S. March as Managing Shareholder and also by Diab.

---

2  The total amount of Purchased Receivables now held by Plaintiff is in excess of $1,000,000.00.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

19. In the *Agreements*, LPG warranted that:

    A.    LPG was conveying to Plaintiff good, valid, transferable and marketable title to all of the Purchased Accounts, free and clear of all liens; and

    B.    LPG's delivery of the Purchased Accounts to Plaintiff would not conflict with, result in any violation of, or default under, or give rise to a right of termination or modification of any obligation, or loss of any benefit, under any contract to which LPG is a party, including any assigned contract.

20. In the *Agreements*, LPG further agreed:

    A.    To indemnify and hold Plaintiff harmless against, *inter alia*, all claims, losses, liabilities, damages, deficiencies, diminutions in value, and costs sustained by Plaintiff as a result of, arising out of, or in connection with any inaccuracy in or breach of any representation or warranty or any breach or non-fulfillment of any obligation to be performed by LPG under its agreements with Plaintiff;

    B.    The *Agreements* would be binding upon Plaintiff and Plaintiff's successors and permitted assigns;

    C.    Neither the *Agreements* nor any rights or obligations of a party thereto shall be assigned, unless to an affiliate of the assigning party, without the prior written consent of the other party; and

    D.    Irreparable damage would occur if any provision of the *Agreements* was not performed in accordance with the terms thereof and that the parties would be entitled to specific performance thereof, in addition to any other remedy to which they are entitled under the *Agreements*, at law or in equity.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

21.     In an abundance of caution, Plaintiff has perfected any security interests under its agreements with LPG by filing appropriate UCC financing statements. However, such perfection is unnecessary since, under the Agreements, LPG sold the Purchased Accounts to Plaintiff.

22.     Based on the foregoing agreements, and the promises, covenants, representations and warranties therein contained, and notwithstanding that the Purchased Accounts are Plaintiff's property, Plaintiff has the right to service all of LPG's accounts and make withdrawals from all of LPG's Clients.

**LPG and Oakstone Act To Contravene Plaintiff's Rights**

23.     For months after LPG's and Plaintiff's entry into the above described *Assignment* and *Agreements*, Plaintiff serviced the Clients' accounts, using data in LPG's software systems and processing withdrawals from the Clients' bank accounts, all in accordance with the parties' contractual arrangements and without objection from LPG.

24.     However, in recent weeks LPG and Oakstone have taken actions in derogation of Plaintiff's rights as aforesaid.

25.     On or about February 2, 2023, LPG implemented changes to its software systems so as to completely deny Plaintiff access thereto.  Notwithstanding Plaintiff's repeated protests about this breach of LPG's obligation to provide "unfettered access," LPG has not restored such access.  The lack of such access impairs Plaintiff's ability to accurately service the Clients' accounts.

26.     On or about February 6, 2023, Plaintiff received an unsigned email purporting to be from legal@lpglaw.com directing Plaintiff to cease and desist from processing payments on any of the Clients' accounts.  The email purports to disavow the *Assignment*, yet offers to discuss resolution of "this dispute."  *See* <u>Exhibit A</u> annexed hereto.

27.     On information and belief, at about the same time, most of LPG's employees were discharged from its employ, and some, including at least two lawyers,

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

became employees of Oakstone, which had been formed only one month earlier.

28.     On February 10, 2023, Oakstone, through counsel, emailed Plaintiff a copy of a cease and desist letter that such counsel had sent to BankUnited ("***BankUnited Letter***").  *See* Exhibit B annexed hereto.  The *BankUnited Letter* states that: (a) Oakstone has retained certain accounts from LPG and LPG has transferred its practice to Oakstone; and (b) Oakstone terminated BankUnited's "relationship" with those accounts on or about February 2, 2023, and has withdrawn any authorization to process automatic withdrawals from any customer account.

29.     The *Assignment* prohibits LPG from taking the actions described in the BankUnited Letter.

30.     The *BankUnited Letter* also enclosed a 300 page listing of clients, with bank account numbers and bank routing numbers (which list is not included in Exhibit B due to the sensitive nature of the information therein).  The list includes thousands of accounts that are Purchased Accounts and, hence, Plaintiff's property.

31.     On February 16, 2023, Oakstone, through counsel, initiated an action (the "**BankUnited Action**") against BankUnited in the District Court of Dallas County, Texas, 192nd Judicial District, under Cause No. DC-23-02116, seeking, among other things, a temporary restraining order and temporary and permanent injunctive relief enjoining BankUnited from processing debits on the accounts on the list enclosed with the *BankUnited Letter*.  A copy of Oakstone's petition is annexed hereto as Exhibit C ("***Petition***").

32.     According to the *Petition*, on or about January 11, 2023, two days after Oakstone was formed, an alleged secured creditor named PECC Corporation ("**PECC**") exercised remedies under an alleged promissory note and security interest. No detail was provided concerning the debt owed to PECC or the manner in which its remedies were exercised.  The *Petition* further asserted that LPG terminated its agreements with its clients, an action prohibited by the *Assignment*, and referred such clients to Oakstone, which is described, notwithstanding that it only recently came

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

into existence, as a consumer protection law firm capable of servicing 15,000 customers. Oakstone claims to have entered new legal service agreements with the 15,000 clients and to have the exclusive authority to process payments from those clients.

33.     Although there is no express statement in the *Petition* that BankUnited is processing withdrawals for Plaintiff, it is clear that Oakstone and LPG believe that to be the case. Interestingly, however, and despite the fact that equitable relief sought in the *Petition* would seriously impair, if not completely abrogate, Plaintiff's rights under the aforesaid agreements, Oakstone failed to name Plaintiff in the *Petition*, thus depriving Plaintiff with advance notice of its filing or a contemporaneous opportunity to be heard in connection therewith.

**LPG and Oakstone are Alter Egos or Oakstone is a Mere Continuation of LPG**

34.     On information and belief, the LPG-Oakstone transaction was a sham transaction, put together for no consideration between affiliated or alter ego parties, for the sole purpose of attempting to divest Plaintiff of its exclusive rights to service LPG's accounts and Plaintiff's ownership of the Purchased Accounts, accounts for which Plaintiff paid in excess of $10,000,000.

35.     Prior to January 9, 2023, Oakstone did not exist.

36.     On information and belief, at the time that the LPG-Oakstone transaction took place, allegedly on January 11, 2023, Oakstone had no ability to provide any types of legal services to 15,000 clients, much less specialized consumer protection legal services.

37.     On information and belief, much of LPG's staff, including at least two lawyers, have been transferred to Oakstone.

38.     On information and belief, Diab manages Oakstone's financial affairs, just as he has been doing for LPG.

39.     Although the California Secretary of State's records indicate that Daniel S. March is the only officer of LPG, and the *Assignment* and *Agreements* were signed

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

95   12

by March as "Managing Shareholder," Plaintiff's dealings with LPG have been with Diab (excepting operations-related communications that have been with lower level employees).

40.    From Plaintiff's recent communications with Diab, Plaintiff believes that Diab directs Oakstone's operations.  Indeed, there may not be any other available representative with whom an interested party can communicate.  Plaintiff's counsel asked Oakstone's counsel for the name of an Oakstone representative, and counsel professed not to recall the name of any such individual.  Further, Oakstone's articles of incorporation identify CT Corporation System, not an individual, as Oakstone's registered agent, and Oakstone has yet to file an initial statement of information with the California Secretary of State.

41.    Additionally, until approximately one week ago, Oakstone appeared to have only a single attorney, Jayde Trinh, a recent law school graduate and LPG attorney whose name remained on LPG's website.

42.    As of February 19, 2023, Oakstone's website identified a single attorney, Scott J. Eadie, as its "head attorney."  LPG's website also has a page describing Mr. Eadie.  On information and belief, Mr. Eadie has become affiliated with LPG and Oakstone only very recently.  On information and belief, for approximately 40 years Mr. Eadie has practiced worker's compensation law at his own law firm, which is still in operation. Mr. Eadie does not appear to have the experience needed to provide consumer protection legal representation to 15,000 consumers located across the United States, much less the background to handle such a firm's financial affairs.

43.    Plaintiff's investigation of this matter is incomplete and is continuing.  Plaintiff reserves the right to amend this Complaint to assert claims should circumstances so warrant.

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

96   13

# FIRST CLAIM FOR RELIEF

## (Breach of Contract– Against both Defendants)

44.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 43 hereof as if fully set forth herein

45.     Defendants, acting in concert and/or as alter egos, have breached the *Assignment* and the *Agreements* by engaging in the conduct described above and such additional claims as may hereafter be proven, including but not limited to: (a) denying Plaintiff unfettered access to LPG's software systems; (b) terminating legal services agreements with customers and inducing such customers to entering into new legal services agreements with Oakstone; (c) attempting to terminate Plaintiff's ability to make withdrawals from customer accounts; (d) causing withdrawals from customer accounts to be made for amounts for which only Plaintiff was authorized to withdraw; and (e) sending the *BankUnited Letter* and filing the *Petition* in an attempt to divert revenue from Plaintiff.

46.     As a result of this conduct, Plaintiff has been and will continue to be damaged.  While the full amount of Plaintiff's damages is presently unknown, Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

47.     Defendants, in engaging in the above-described conduct, are guilty of oppression, fraud and/or malice, and were acting with willful and conscious disregard of the rights of Plaintiff.  Plaintiff is therefore entitled to punitive damages against Defendants in an amount appropriate to properly punish those defendants for their conduct and to deter similar future conduct.

48.     Based on the foregoing, Plaintiff is also entitled to a temporary restraining order, and preliminary and permanent injunctions commanding Defendants to provide Plaintiff unfettered access to all of LPG's and Oakstone's software systems containing non-privileged client or customer data and restraining and enjoining Defendants, and anyone acting in concert with either of them, and all such parties'

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

agents, servants, employees, and other persons or entities acting on their behalf, or purportedly acting on their behalf, from any transfer of any customer and client accounts, termination of any agreements with customers and clients, withdrawals from any customer or client accounts, and from taking any actions that by design or effect may dissuade or prevent any person from processing withdrawals submitted by or on behalf of Plaintiff.

## SECOND CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations - Against Oakstone)

49.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 48 hereof as if fully set forth herein.

50.     As alleged herein, Plaintiff had and has valid existing contracts with LPG and has performed in accordance with such contracts.

51.     Oakstone, as part of its business relationship with LPG, knew of the contracts between Plaintiff and LPG.

52.     Oakstone, with the intent of disrupting and/or destroying the contracts between Plaintiff and LPG, engaged in the conduct described herein and such additional conduct as may hereafter be proven, including but not limited to: (a) participating in and assisting LPG in its alleged termination of legal services agreements with customers and entering into new legal services agreements with them; (b) causing withdrawals to be made from such customer accounts for amounts which only Plaintiff was authorized to withdraw; (c) sending the *BankUnited Letter* and filing the *Petition* in an attempt to diverting revenue from Plaintiff.

53.     Oakstone's conduct was willful and in bad faith and intended to disrupt the performance of LPG's obligations under the contracts to prevent Plaintiff from recovering the monies it is owed so that LPG and Oakstone could keep the revenue for their own benefit.

54.     As a result of this conduct, Plaintiff has been and will continue to be damaged. The full amount of Plaintiff's damages is presently unknown. Plaintiff is

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

55.     Oakstone, in engaging in the above-described conduct, is guilty of oppression, fraud and/or malice, and was acting with willful and conscious disregard of the rights of Plaintiff.  Plaintiff is therefore entitled to punitive damages against Oakstone in an amount appropriate to properly punish such defendant for its conduct and to deter similar future conduct.

### THIRD CLAIM FOR RELIEF
### (Conversion – Against both Defendants)

56.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 55 hereof as if fully set forth herein.

57.     Defendants have intentionally and substantially interfered with Plaintiff's property and rights without permission.

58.     Defendants without authority intentionally deprived Plaintiff of possession and access to its personal property.

59.     Defendants have wrongfully exercised dominion over property of Plaintiff.

60.     Defendants have assumed control over Plaintiff's property and have precluded Plaintiff from access to Plaintiff's property.

61.     As a result of this conduct, Plaintiff has been and continues to be damaged.  The full amount of Plaintiff's damages is presently unknown. Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

### FOURTH CLAIM FOR RELIEF
### (Avoidance and Recovery of Fraudulent Transfers – Against Oakstone)

62.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 61 hereof as if fully set forth herein.

63.     Plaintiff is a creditor of LPG.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

64.     LPG transferred assets to Oakstone with actual intent to hinder, delay and defraud its creditors.

65.     LPG transferred assets to Oakstone without receiving a reasonably equivalent value in exchange for such transfer, and was engaged or about to engage in a business or transaction for which the remaining assets or LPG were unreasonably small in relation to the business or transaction, and/or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond LPG's ability to pay as they became due.

66.     Plaintiff was a creditor of LPG before LPG transferred assets to Oakstone.

67.     LPG transferred assets to Oakstone without receiving reasonably equivalent value in exchange for the transfer and LPG was insolvent at the time of the transfer or became insolvent as a result of the transfer.

68.     Plaintiff is entitled to avoidance of the transfer of LPG's assets to Oakstone and recovery of the assets for the benefit of Plaintiff.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief – Against both Defendants)

69.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 68 hereof as if fully set forth herein.

70.     An actual conflict has arisen and now exists between Plaintiff and Defendants concerning Plaintiff's contractual rights and Defendants' interference with Plaintiff's rights.

71.     Plaintiff desires a judicial determination and declaration of the rights of the parties.  Such a determination is appropriate at this time so that Plaintiff may determine its rights and duties.

72.     Plaintiff seeks damages and other relief as prayed.

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

# SIXTH CLAIM FOR RELIEF

## (Temporary Restraining Order, and Preliminary and Permanent Injunctions – Against Both Defendants)

73.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 72 hereof as if fully set forth herein.

74.     Based on the foregoing, Plaintiff is also entitled to a temporary restraining order, and preliminary injunction and a permanent injunctions commanding Defendants to provide Plaintiff unfettered access to all of LPG's and Oakstone's software systems containing non-privileged client or customer data and restraining and enjoining Defendants, and anyone acting in concert with either of them, and all such parties' agents, servants, employees, and other persons or entities acting on their behalf, or purportedly acting on their behalf, from any transfer of any customer and client accounts, termination of any agreements with customers and clients, withdrawals from any customer or client accounts, and from taking any actions that by design or effect may dissuade or prevent any person from processing withdrawals submitted by or on behalf of Plaintiff.

75.     Plaintiff will be irreparably harmed if a temporary restraining order and the injunctions are not issued as set forth above.

76.     Plaintiff is likely to and will succeed on the merits of Plaintiff's claims in this action.

77.     The equities in this action favor the granting of injunctive relief in Plaintiff's favor and the injunction is in the public interest.

78.     Plaintiff has no adequate remedy at law as to future damages if the requested injunction is not issued.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For judgment in favor of Plaintiff on all causes of action;

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

2. For the temporary restraining order and preliminary and permanent injunctive relief requested in this Complaint;

3. For general damages, plus interest, according to the proofs at trial;

4. For lost profits according to the proofs at trial;

5. For punitive damages according to the proofs at trial;

6. For reasonable attorneys' fees and costs incurred herein to the extent permitted by statute or contract;

7. For prejudgment interest; and

For such other relief as the Court deems just and proper.

Dated: February 24, 2023
                        Respectfully submitted,

                        LOCKE LORD LLP

                        By: */s/ David Kupetz*
                             David Kupetz
                        *Attorneys for Plaintiff MARICH BEIN LLC*

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

# EXHIBIT A

From: **Legal** <legal@lpglaw.com>
Date: Mon, Feb 6, 2023 at 11:20 AM
Subject: Fw: URGENT - LPG LAW SERVICING RIGHTS | ATTN: Kevin Kurka, Daniel S March.
To: hd@marichbein.com <hd@marichbein.com>, israel@marichbein.com <israel@marichbein.com>,
max@marichbein.com <max@marichbein.com>

To Whom it May Concern -

You are hereby instructed to cease and desist any payment processing of any client of The
Litigation Practice Group PC. After discussion with Daniel S. March, I have confirmed that he
did not execute an Assignment of Servicing Rights Agreement with Marich Bein LLC or any other
entity. Please produce the same if you believe Mr. March executed the same. Please note that
any forged document has no legal force or effect, and your participation in any such forgery is
actionable. LPG intends to enforce its rights to the full extent of the law.

Further, even to the extent that you mistakenly believe you possess a servicing right, such right
would not permit you to withdraw money from a client on a day or in any amount *not* approved
by that client. If your information is not pulled from LPG's customer relationship management
program the day prior to a payment, then the information is not accurate and the payment you
attempt to pull is not authorized. At present, LPG processes between 500 and 700 payment
adjustments per day. There is no reasonable basis for believing that data from a prior month is
accurate for payment processing in the current month. If your alleged servicing agreement
contains a provision that allows you to pull payments based on historic data outside of our CRM
then such provision would in any event by void as a matter of law as LPG does not have the
right to grant you authority to pull a payment from a client that the client does not
authorize. To be clear, a change in payment date or payment amount modifies LPG's authority
to pull a payment; if your information is not up to date it is not authorized and may constitute
conversion.

We are willing to discuss an amicable resolution to this dispute, which would include
assurances that you would receive any payment to which you are entitled. But if you unlawfully
process a payment of an LPG client then LPG will withhold any payment pending a full
assessment of the damage caused by such criminal conduct, including reputational damage,
and application of an offset to any amount you are allegedly owed. In addition, LPG will notify
Bank United of your unlawful conduct and will file suit and seek injunctive relief against both
you and Bank United. If you confirm in writing that you will not process any client payments
pending discussion of a resolution, then we will not contact Bank United and will work in good
faith to resolve this dispute. If you do not so confirm, LPG will contact Bank United and seek
court intervention to stop your criminal conduct. Please respond forthwith.

In addition, any prior agreement with Tony Diab does not bind LPG. Any prior association
between LPG and Mr. Diab has ceased and in any event Mr. Diab was never authorized to act
on behalf of LPG. Any participation that you had with Mr. Diab may constitute aiding and

abetting the unauthorized practice of law, and may be actionable on both civil and criminal grounds; you should seek the advice of an attorney regarding the same.

You have been placed on notice.  Govern your conduct accordingly.

Regards,

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

# EXHIBIT B

**Rusty J. O'Kane**
**(214) 740-4039 Direct Dial**
rusty.okane@wickphillips.com
www.wickphillips.com

February 10, 2023

**VIA CMRRR 9314 8699 0430 0104 3217 91**
Rajinder P. Singh
Chairman, President, and
Chief Executive Officer
BankUnited, Inc.
14817 Oak Lane
Miami Lakes, Florida 33016
(305) 569-2000

**VIA CMRRR 9314 8699 0430 0104 3219 51**
Kevin Malcolm
General Counsel
BankUnited, Inc.
14817 Oak Lane
Miami Lakes, Florida 33016
(305) 569-2000

Re:     **Cease and Desist and Revocation of Authority for Debits on Behalf of Oakstone Law Group, PC and its affiliates (together, "Oakstone")**

Dear Messrs. Singh and Malcolm:

We represent Oakstone in connection with its recent retention of certain accounts from Litigation Practice Group ("LPG"). LPG transferred its practice to Oakstone, which has taken over servicing clients to assist in reducing and eliminating their debt. To that end, LPG terminated BankUnited's relationship with these accounts on or around February 2, 2023. Upon termination, LPG withdrew any authorization to process automatic debits from any customer account, and such termination extended to Oakstone. Likewise, all Legal Services Agreements and Electronic Payment Authorizations between BankUnited and LPG were terminated and revoked. Oakstone, for its part, has never authorized BankUnited to debit any account on its behalf. In the event such terminations were not previously clear, we are reiterating that any such authorizations between clients of LPG/Oakstone and BankUnited are revoked and/or terminated. Despite this revocation, we have learned that BankUnited continues debiting client accounts without authorization.

Please take all immediate and necessary steps to cease taking automatic payments from any account associated with LPG or Oakstone. Attached is a spreadsheet identifying many of the accounts in question, although BankUnited should do an independent audit to ensure its compliance. This revocation applies to any and all future debits. These accounts total $5.2 million per month—damages we fully intend to pursue if unauthorized debits continue to occur.

Should you refuse or fail to honor these revocations, we have been authorized to take all available legal action, including filing a lawsuit seeking injunctive relief to stop BankUnited's intentional disruption of Oakstone's business and interference with its customer relationships. This letter should not be construed as a waiver of any duties, covenants, or obligations owing or owed by any party, and nothing herein shall release or discharge you from any liability.

If you have any questions or concerns, please feel free to contact me.

**Dallas —** 3131 McKinney Avenue, Suite 500 • Dallas, Texas 75204 • 214.692.6200 • 214.692.6255 Fax
**Fort Worth —** 100 Throckmorton, Suite 1500 • Fort Worth, Texas 76102 • 817.332.7788 • 817.332.7789 Fax
**Austin —** 7004 Bee Caves Road, Bldg. 1, Suite 1100 • Austin, Texas 78746 • 512.681.3732 • 512.681.3741 Fax

107

February 10, 2023
Page 2

Sincerely,

Rusty O'Kane

cc: cc:     hd@marichbein.com
        israel@marichbein.com
        max@marichbein.com

# EXHIBIT C

FILED
2/16/2023 10:38 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

1 CIT-ESERVE

DC-23-02116

CAUSE NO. _____

| | | |
|---|---|---|
| OAKSTONE LAW GROUP, PC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | 192nd |
| BANKUNITED, N.A. | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION;
## APPLICATION FOR TEMPORARY RESTRAINING ORDER;
## AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF

Plaintiff, OAKSTONE LAW GROUP, PC ("Oakstone" or "Plaintiff"), by and through its undersigned counsel, hereby files this Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief (the "Petition"), against Defendant BankUnited, N.A. ("BankUnited" or "Defendant"), based on the following grounds:

## I.
## INTRODUCTION

As a law firm specializing in debt collection defense, Oakstone assumed the representation of a number of clients from another law firm, the Litigation Practice Group, PC ("LPG"). To that end, LPG terminated its relationship with these clients on or about February 2, 2023 – and with it, terminated any authorizations to take automatic debits from these clients' bank accounts for the clients' monthly payments for legal services. At that time, LPG also terminated any other party's access to the CRM (customer relationship management) software LPG uses to maintain records of client payments, including the date and amount the client authorizes for payments in a given month.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 1

Even so, and despite instructions to cease and desist, BankUnited continues to debit Oakstone's client accounts daily, allegedly on behalf of LPG. Moreover, because BankUnited no longer has access to client payment instructions and authorizations, it causes many of Oakstone's clients to be double-billed.

These duplicate withdrawals have not only caused doubt and confusion for Oakstone's clients but also necessitated Oakstone refunding the customers' monthly payments. More importantly, because BankUnited is erroneously using payment information from prior months, numerous clients who do not have a payment due are being debited, and numerous other clients have a payment pull in a different amount than what those clients have authorized in the month of February. If this improper conduct continues, Oakstone will be unable to cover its operating expenses and will be forced to shutter its doors. As such, this suit has become necessary, and the Court must immediately enjoin BankUnited from taking automatic payments from these accounts. By this action, Oakstone seeks to stop these actions, enforce its rights, and seek redress for BankUnited's continuing and irreparable injury to Oakstone.

## II.
## DISCOVERY PLAN AND RULE 47 DISCLOSURE

1.      Pursuant to the Texas Rule of Civil Procedure 190.4, discovery in this matter will be conducted under a Level 2 Discovery Plan, subject to any Court Order expediting discovery in this matter.

2.      Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff discloses that it currently seeks monetary relief over $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees. Plaintiff also seeks other non-monetary relief.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 2

### III.
### PARTIES

3.      Plaintiff Oakstone Law Group, PC is a company organized and existing under the laws of California and has its principal place of business located at 888 Prospect Street, Ste 200, La Jolla, CA 92037.

4.      Defendant BankUnited, N.A., is a foreign corporation organized under the laws of the State of Connecticut, with its principal place of business located at 14817 Oak Lane, Miami Lakes, Florida 33016. At all relevant times, BankUnited was authorized to and is both doing and transacting business in Texas. BankUnited may be served with process through its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

### IV.
### JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action by virtue of the relief sought herein, and because the amount in controversy exceeds the minimum jurisdictional requirements of this Court. This Court has jurisdiction over BankUnited because it is registered to do business in Texas, has meaningful ties, business relationships and/or contacts in Texas, has displayed an intent to serve the market in Texas, and is committing tortious actions within Dallas County that harm Dallas County residents.

6.      Pursuant to Section 15.001, *et seq*. of the Texas Civil Practice and Remedies Code, venue is proper in Dallas County because all or a substantial part of the events and representations giving rise to Plaintiff's claims occurred in Dallas County, as a number of Plaintiff's affected customers reside in Dallas County, Texas. *See* **Exhibit A-4.**

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 3

# V.
## FACTUAL ALLEGATIONS

7.    The Litigation Practice Group, PC ("LPG") is a law firm that provides debt relief and debt resolution services to a large portfolio of over 50,000 clients. In return, these customers signed Legal Services Agreements authorizing LPG to collect monthly payments by withdrawing directly from their accounts. LPG processes between 700 and 2,000 payments per day.

8.    On or about January 11, 2023, PECC Corporation ("PECC") exercised its remedies against LPG under a promissory note on which LPG had defaulted. PECC held a perfected, secured interest in the receivables of LPG. PECC was among the largest creditors of LPG. As a debtor to PECC, LPG was unable to continue to bear the cost of servicing the customers and terminated the Legal Services Agreements it had with the customers. The payment authorizations the customers executed as part of the Legal Services Agreement were also terminated at that time.

9.    Upon the termination of its Legal Services Agreements, LPG referred approximately 15,000 customers (the "Customers") to Oakstone Law Group, PC ("Oakstone"), a customer protection law firm capable of servicing the Customers. Oakstone helps these Customers, who are dealing with high-interest debt or bills, with legal representation against their creditors and debt collectors.

10.    Oakstone agreed to take on the servicing of these clients and received the transfer of these files. The Customers signed legal service agreements with Oakstone and authorized Oakstone, as part of these agreements, to pull monthly payments directly from the Customers' accounts. Thus, Oakstone exclusively owns all authority to process payments from the Customers, on behalf of itself and PECC. To accomplish this, Oakstone set up its own separate system of debiting the Purchased Accounts, with customer authorizations and agreements to permit the

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 4

debits. Moreover, Oakstone is actively communicating with clients to ensure the payment date and amount are actually authorized by the Customers.

11.   Shortly thereafter, LPG became aware BankUnited continued to process payments from Customers after LPG had terminated its representation of those Customers and after it had rescinded access to the CRM containing accurate data regarding authorized client payments. This led to Customers being billed twice – once by Oakstone's processor and once by BankUnited – and also led to Customers having payments pulled even though they had withdrawn their authorization for anyone, including Oakstone, to pull a payment.

12.   As such, on February 6, 2023, LPG sent a written cease and desist to Marich Bein, LLP ("Marich Bein"), demanding Marich Bein stop processing Customers' payments and withdraw any authorization or instruction to BankUnited to process automatic debits. LPG's letter clarified for Marich Bein that using old data would Customers having payments pulled in the wrong amount, on the wrong date, and on accounts where payment authorization had been withdrawn in a given month. A true and correct copy of the termination correspondence from LPG to Marich Bein is attached as **Exhibit "A-1."**

13.   BankUnited no longer has any authority to debit Customers whose relationship with LPG had been terminated and who are now represented by Oakstone, an entity with no agreement of any kind with BankUnited. Regardless, BankUnited continues to charge Customers allegedly on behalf of "LPG":

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 5

114



These erroneous "LPG" charges cause customers (like the one above) to be charged once by "LPG" (but, really, BankUnited) and again by Oakstone for their monthly legal services fee.

14.    On or about February 10, 2023, Oakstone sent further correspondence to BankUnited, reiterating any such authorizations for the Purchased Accounts were revoked and/or terminated at the same time. A true and correct copy of this correspondence is attached as **Exhibit "A-2"** (with an attached list of the Purchased Accounts attached, which will be provided to the Court *in camera* due to confidential and privileged client information), attached to **Exhibit "A,"** the Declaration of Oakstone's chief financial officer, Dougliang Jiang.

15.    Even so, BankUnited continues to complete these withdrawals from Customers' bank accounts – which amounted to hundreds of thousands of dollars and a number of customer complaints concerning improper debits. Specifically, these automatic withdrawals continue to cause Customers to have overdrafts and fees, prevent them from making other timely payments,

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 6

115

affect their credit scores, and result in Customers canceling their enrollment with Oakstone. For example, one customer wrote:



Further examples of these complaints are attached as **Exhibit "A-3."** Many of these customers reside in Dallas County. A true and correct copy of the spreadsheet of Dallas County and Texas Customers will be provided to the Court *in camera* as **Exhibit "A-4"** due to confidential and privileged client information.

16.      The double debits forced Oakstone to refund these Customers their monthly payment amounts. Further, to prevent Customers from leaving and to save their reputation and goodwill, Oakstone stopped collections from Customers because BankUnited refused.

17.      Specifically, on or about February 13, 2023, in response to Oakstone's cease and desist to BankUnited, counsel for Marich Bein issued correspondence to Oakstone asserting Marich Bein's alleged superior right to the Purchased Accounts. A true and correct copy of correspondence is attached as **Exhibit "B-1,"** attached to **Exhibit "B,"** the Declaration of Oakstone's Texas counsel, Rusty O'Kane. However, at Oakstone's request, Marich Bein failed to produce any evidence in support of its claim LPG "assigned, sold and conveyed certain accounts" to Marich Bein or evidencing LPG gave Marich Bein the exclusive and non-cancellable right to service the Purchased Accounts that would allow BankUnited to continue these withdrawals. A

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 7

116

true and correct copy of this request is attached as **Exhibit "B-2."** In any event, LPG does not have actual or apparent authority to bind Oakstone.

18.      If Oakstone is precluded from collecting its monthly charges from the Customers, Oakstone will be unable to cover its operating expenses and faces shuttering its doors as early as next week. This will result in more than 15,000 clients – many of them Dallas County residents – going without representation in court, including in ongoing lawsuits across the country.

19.      Thus, Oakstone seeks emergency court intervention to stop the double-debiting of the Purchased Accounts, refund the fees debited, and restore the relationships between Oakstone and its clients.

## VI.
## CAUSES OF ACTIONS

### COUNT ONE – DECLARATORY JUDGMENT

20.      Plaintiff repeats and realleges all prior paragraphs.

21.      Plaintiff Oakstone seeks a declaratory judgment to resolve questions concerning the respective rights, obligations, and duties of Oakstone and Defendant with respect to the Purchased Accounts.

22.      An actual case or justiciable controversy exists between Oakstone and Defendant concerning Oakstone's superior and exclusive entitlement to charge the Purchased Accounts and to the parties' prospective rights and obligations.

23.      A judgment would serve a useful purpose in clarifying and/or settling these legal issues.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 8

117

24. Further, the issuance of declaratory relief by this Court will finalize some or all of the existing controversy between the parties and will offer relief from the parties' uncertainty concerning the Purchased Accounts and their prospective rights and obligations.

25. By reason of the foregoing, Oakstone is entitled to a declaratory judgment establishing superior and exclusive ownership and entitlement to charge the Purchased Accounts.

26. Therefore, Oakstone requests this Court issue declarations that:

    a. Oakstone holds sole and exclusive entitlement to debit the Purchased Accounts;

    b. BankUnited has wrongfully debited the Purchased Accounts since the Purchased Account were assumed by Oakstone; and

    c. Any prior authorization(s) granted to BankUnited to debit the customer accounts was/were properly revoked.

27. Unless the Court makes these declarations, Oakstone will suffer considerable and continuing economic and other harm.

28. Oakstone requests this Court award Oakstone its reasonable and necessary attorneys' fees, plus interest and costs, incurred in pursuing these declarations and for such other and further relief as this Court deems just and proper.

## COUNT TWO – TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT

29. Plaintiff repeats and realleges all prior paragraphs.

30. Pleading in the alternative, to the extent necessary, Oakstone has contracts with the Customers to provide legal services.

31. Defendant knew of these contracts yet continue to intentionally interfere with them. Despite notice, Defendant continue to make automatic withdrawals from Customer accounts, and Oakstone suffered damages as a result.

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 9

118

32.     Accordingly, Oakstone has been damaged in an amount to be determined at trial.

## COUNT THREE – APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

33.     Plaintiff repeats and realleges all prior paragraphs.

34.     Oakstone seeks a temporary restraining orderth pending this Court's ruling on a preliminary injury because BankUnited is debiting the Purchased Accounts daily, with the intent to preclude Oakstone from rightfully collecting from the Customers.

35.     Unless restrained by this Court, BankUnited will continue its improper and unlawful actions of withdrawing from the Purchased Accounts, interfering with Oakstone's relationships with Customers, and Oakstone will continue to be immediately and irreparably harmed as a result.

36.     Injunctive relief is fully warranted due to the continued harm and damages flowing from BankUnited's actions—damages that are difficult to calculate, and attempting to calculate those damages would lead to a multiplicity of actions.

37.     Customers make monthly payments to Oakstone, which usually amount to several hundred dollars per month. These customers cannot afford to have BankUnited double charge them. Many customers have complained to Oakstone these automatic withdrawals have caused their accounts to overdraft, have prevented them from making other payments, and have affected their credit scores. *See* **Exhibit A-3**. Customers are canceling their subscriptions with Oakstone as a result.

38.     The threatened harm to Oakstone outweighs the threatened harm to BankUnited. If a TRO (and later, temporary injunction) is not issued, Oakstone will lose more customers and faces a substantial threat to its reputation and the goodwill it has built with those clients. If Oakstone is

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 10

119

further precluded from collecting its monthly charges from the Customers, Oakstone will be unable to cover its operating expenses and faces shuttering its doors as early as next week.

39.    As a direct and proximate cause of BankUnited's unlawful conduct as described above, Oakstone has suffered damages that cannot be reasonably ascertained at present. Oakstone has also suffered incalculable reputational damages for which Oakstone has no adequate remedy at law. Oakstone is, therefore, entitled to an injunction enjoining BankUnited from further unlawful acts.

40.    The public interest also weighs in favor of granting a TRO and temporary injunction because that interest includes the need for protection and security from customers from being double-billed by unauthorized third parties. Customers authorize Oakstone to make these payments rely on Oakstone's reputation to appropriately and adequately make those withdrawals without issue. Due to BankUnited's conduct, Oakstone may be abruptly unable to provide legal services to these 15,000 Customers altogether. This would result in more than 15,000 clients going without representation in court, including in ongoing lawsuits across the country.

41.    Oakstone has demonstrated through this pleading, and the evidence attached hereto it will likely succeed on the merits of the case, and it will suffer immediate and irreparable injury if BankUnited and those acting in active concert or participation with it, are not immediately enjoined from its wrongful acts. By virtue of the foregoing, Oakstone has also demonstrated it has no adequate remedy at law, and a balancing of the equities favors the issuance of an injunction against BankUnited.

42.    Therefore, Oakstone is entitled to a temporary restraining order followed by temporary and permanent injunctive relief. Oakstone requests the Court issue a temporary

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 11

restraining order and temporary injunction, thereafter to be made permanent, immediately enjoining and restraining BankUnited, its agents, servants, employees, and attorneys, and those persons in active concert or participation with it, as follows:

(a)     Accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts without Oakstone's express written authorization; and

(b)     Taking any action to prevent Oakstone from accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts.

## COUNT FOUR -- ATTORNEYS' FEES

43.     Because of Defendant's actions, Oakstone was required to retain the undersigned attorneys and has incurred, and continues to incur, fees and expenses. Oakstone is entitled to recover payment from Defendant for its reasonable and necessary attorneys' fees under Chapter 37.009 of the Texas Civil Practice and Remedies Code.

## VII.
## CONDITIONS PRECEDENT

44.     Prior to the filing of this action, Oakstone satisfied all applicable conditions precedent for bringing this suit.

## VIII.
## JURY DEMAND

45.     Oakstone hereby demands a trial by jury on all claims so triable.

## IX.
## REQUEST FOR RELIEF

**WHEREFORE**, Oakstone requests that judgment be entered in its favor and against BankUnited and that Oakstone be granted the following relief:

A.     Enter declarations against Defendant as requested herein;

B.     Finding Defendant tortiously interfered with Oakstone's contract(s);

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 12

121

      C.      A temporary restraining order and temporary injunction, thereafter to be made permanent, against BankUnited, its agents, servants, employees and attorneys, and those persons in active concert or participation with it, as follows:

        a.    Accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts without Oakstone's express written authorization; and

        b.    Taking any action to prevent Oakstone from accepting, directing, or initiating automatic payments, transfers, or debits from any of the Purchased Accounts.

      D.      Enter judgment against Defendant for actual damages, pre- and post-judgment interest, and attorneys' fees and costs; and

      C.      Such other and further relief as requested herein and/or to which Oakstone may otherwise be entitled.

Dated: February 16, 2023

Respectfully submitted,

*/s/ Rusty J. O'Kane*
Rusty J. O'Kane
State Bar No. 24088149
*rusty.okane@wickphillips.com*
Alexandra W. Wahl
State Bar No. 24071581
*alex.wahl@wickphillips.com*

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
(214) 692-6200 (telephone)
(214) 692-6255 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

PLAINTIFF'S VERIFIED ORIGINAL PETITION;
APPLICATION FOR TEMPORARY RESTRAINING ORDER;
AND APPLICATION FOR TEMPORARY AND PERMANENT RELIEF – Page 13

# VERIFICATION

STATE OF MASSACHUSETTS )
                                              ) ss.:
COUNTY OF MIDDLESEX )

**DONGLIANG JIANG**, being duly sworn, deposes and says:

1.      I am chief financial officer of Oakstone Law Group, PC ("Oakstone" or "Plaintiff"), Plaintiff in the above-captioned action. I have read the foregoing complaint in the above-entitled cause; and the same is true to my own knowledge, except as those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true, based upon my position with Oakstone, my review of the business records of Oakstone, and/or my interviews of persons with knowledge within Oakstone.

DONGLIANG JIANG

Sworn to before me this
_15_ day of February 2023

Notary Public

Marc Henry Pierre Joseph
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
03/20/2026

# Exhibit "A"

CAUSE NO. _____

| | | |
|---|---|---|
| OAKSTONE LAW GROUP, PC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| BANKUNITED, N.A. | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## AFFIDAVIT OF DOUGLIANG JIANG

| | |
|---|---|
| STATE OF MASSACHUSETTS | ) |
| | ) ss.: |
| COUNTY OF MIDDLESEX | ) |

**DOUGLIANG JIANG**, being duly sworn, deposes and says:

1.      My name is Dougliang Jiang. I have never been convicted of a felony, am of sound mind, competent, and authorized to make this Affidavit, the statements of which are within my personal knowledge, true, and correct.

2.      I am chief financial officer of Oakstone Law Group, PC ("Oakstone" or "Plaintiff"), Plaintiff in the above-captioned action. I respectfully submit this Affidavit in support of Plaintiff's Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief (the "Petition") against Defendant BankUnited, N.A. ("BankUnited" or "Defendant").

3.      I have read Plaintiff's Petition in the above-entitled cause. The facts stated therein are within my personal knowledge and are true and correct, based upon my position with Oakstone, my review of the business records of Oakstone, and/or my interviews of persons with knowledge within Oakstone.

4. Upon the termination of its Legal Services Agreements, the Litigation Practice Group, PC ("LPG") referred approximately 15,000 customers (the "Customers") to Oakstone Law Group, PC ("Oakstone"), a customer protection law firm capable of servicing the Customers. Oakstone helps these Customers, who are dealing with high-interest debt or bills, with legal representation against their creditors and debt collectors.

5. Oakstone agreed to take on the servicing of these clients and received the transfer of these files. The Customers signed legal service agreements with Oakstone and authorized Oakstone, as part of these agreements, to pull payments directly from the Customers' accounts. Thus, Oakstone exclusively owns all authority to process payments from the Customers, on behalf of itself and PECC. To accomplish this, Oakstone set up its own separate system of debiting the Purchased Accounts, with customer authorizations and agreements to permit the debits. Moreover, Oakstone is actively representing and communicating with clients to ensure the payment date and amount are actually authorized by the Customers.

6. As such, on February 6, 2023, LPG sent a written cease and desist to Marich Bein, demanding Marich Bein stop processing Customers' payments through BankUnited and withdraw any authorization or instruction to BankUnited to process automatic debits. LPG's letter clarified that using old data will result in Customers having payments pulled in the wrong amount, on the wrong date, and on accounts where payment authorization had been withdrawn in a given month. A true and correct copy of the termination correspondence from LPG to Marich Bein is attached as **Exhibit "A-1."**

7. BankUnited no longer has any authority to debit Customers whose relationship with LPG had been terminated and who are now represented by Oakstone, an entity with no agreement of any kind with BankUnited. Regardless, BankUnited continues to charge Customers allegedly

on behalf of "LPG." These erroneous "LPG" charges cause customers to be charged once by "LPG" (but, really, BankUnited) and again by Oakstone for their monthly legal services fee. We continue to get daily complaints from Customers with screenshots (like the one above) demanding refunds for the duplicate payments.

8.      On or about February 10, 2023, Oakstone sent further correspondence to BankUnited, reiterating any such authorizations for the Purchased Accounts were revoked and/or terminated at the same time. A true and correct copy of this correspondence is attached as **Exhibit "A-2"** (with a list of the Purchased Accounts attached, which can be provided to the Court *in camera* due to confidential and privileged client information).

9.      Even so, BankUnited continues to complete these withdrawals from Customers' bank accounts – which amounted to hundreds of thousands of dollars and a number of customer complaints concerning improper debits. Specifically, these automatic withdrawals continue to cause Customers to have overdrafts and fees, prevent them from making other timely payments, affect their credit scores, and result in Customers canceling their enrollment with Oakstone. Examples of these complaints are attached as **Exhibit "A-3."** A true and correct copy of the spreadsheet of Dallas County and Texas Customers will be provided to the Court *in camera* as **Exhibit "A-4"** due to confidential and privileged client information.

10.     The double debits forced Oakstone to refund these Customers their monthly payment amounts. Further, in an effort to prevent Customers from leaving and to save their reputation and customer goodwill, Oakstone stopped collections from Customers because BankUnited refused.

11.     Now, Oakstone continues to receive complaints from Customers and cancellations of their subscriptions. Today alone, due to BankUnited's continued debits of these accounts,

Oakstone is unable to collect over $600,000 in fees today for legal services it rendered from those Customers and continues to receive notifications of Customers cancelling their subscriptions due to the double-billing. These numbers will only multiply and prevent Oakstone from collecting any payments. If this continues, in the next week, Oakstone will be forced to fire its employees and close its doors next week. This will result in roughly 15,000 clients going without representation in court, including in ongoing lawsuits across the country and undeniable harm to Oakstone and its reputation.

12.     Thus, Oakstone seeks emergency court intervention to stop the double-debiting of the Purchased Accounts, refund the fees debited, and restore the relationships between Oakstone and its clients.

13.     Attached hereto as **Exhibit A-1** is a true and correct copy of correspondence, dated February 6, 2023, sent on behalf of the Litigation Practice Group, PC ("LPG") to Marich Bein requesting that all payment processing for clients of LPG through BankUnited cease and desist.

14.     Attached hereto as **Exhibit A-2** is a true and correct copy of correspondence, dated February 10, 2023, sent to BankUnited on behalf of Oakstone reiterating that any authorization between clients of LPG/Oakstone to BankUnited was revoked and/or terminated. Attached to this letter, Oakstone included a list of client accounts, which has been excluded from the filing for privacy and confidentiality.

15.     Attached hereto as **Exhibit A-3** are true and correct copies of examples of several client complaints about unauthorized withdrawals.

16.     Attached hereto as as **Exhibit "A-4"** is a true and correct copy of the spreadsheet of Dallas County and Texas Customers, which will be provided to the Court *in camera* due to confidential and privileged client information.

17.     In my position as an officer for Oakstone, I am a custodian of records at Oakstone, and, as such, am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. The Records attached hereto as **Exhibits A-1 through A-3** (the "Records"), respectively, are kept by Oakstone in the regular course of its business. It was the regular course of business of Oakstone for an employee or representative of Oakstone with knowledge of the act, event, condition, or opinion recorded to make the Records or to transmit information thereof to be included in such Records. These Records were (1) made as a memorandum or record of an act, transaction, occurrence or event; (2) made at the time of the act, transaction, occurrence or event, or within a

WHEREFORE, for all these reasons, Oakstone's motion for a temporary restraining order and preliminary injunction should be granted in its entirety, and Oakstone should be granted such other and further relief as is just and proper.

Executed on February 15, 2023.

DONGLIANG JIANG

Sworn to before me this
15 day of February 2023

Notary Public

Marc Henry Pierre Joseph
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
03/20/2026

# Exhibit "A-1"

## Fw: URGENT   LPG LAW SERVICING RIGHTS | ATTN: Kevin Kurka, Daniel S March.

**Legal** <legal@lpglaw.com>
Mon 2/6/2023 8:20 AM
To: hd@marichbein.com  hd@marichbein.com  ;israel@marichbein.com
<israel@marichbein.com>;max@marichbein.com <max@marichbein.com>

To Whom it May Concern -

You are hereby instructed to cease and desist any payment processing of any client of The Litigation Practice Group PC. After discussion with Daniel S. March, I have confirmed that he did not execute an Assignment of Servicing Rights Agreement with Marich Bein LLC or any other entity. Please produce the same if you believe Mr. March executed the same. Please note that any forged document has no legal force or effect, and your participation in any such forgery is actionable. LPG intends to enforce its rights to the full extent of the law.

Further, even to the extent that you mistakenly believe you possess a servicing right, such right would not permit you to withdraw money from a client on a day or in any amount *not* approved by that client. If your information is not pulled from LPG's customer relationship management program the day prior to a payment, then the information is not accurate and the payment you attempt to pull is not authorized. At present, LPG processes between 500 and 700 payment adjustments per day. There is no reasonable basis for believing that data from a prior month is accurate for payment processing in the current month. If your alleged servicing agreement contains a provision that allows you to pull payments based on historic data outside of our CRM then such provision would in any event by void as a matter of law as LPG does not have the right to grant you authority to pull a payment from a client that the client does not authorize. To be clear, a change in payment date or payment amount modifies LPG's authority to pull a payment; if your information is not up to date it is not authorized and may constitute conversion.

We are willing to discuss an amicable resolution to this dispute, which would include assurances that you would receive any payment to which you are entitled. But if you unlawfully process a payment of an LPG client then LPG will withhold any payment pending a full assessment of the damage caused by such criminal conduct, including reputational damage, and application of an offset to any amount you are allegedly owed. In addition, LPG will notify Bank United of your unlawful conduct and will file suit and seek injunctive relief against both you and Bank United. If you confirm in writing that you will not process any client payments pending discussion of a resolution, then we will not contact Bank United and will work in good faith to resolve this dispute. If you do not so confirm, LPG will contact Bank United and seek court intervention to stop your criminal conduct. Please respond forthwith.

In addition, any prior agreement with Tony Diab does not bind LPG. Any prior association between LPG and Mr. Diab has ceased and in any event Mr. Diab was never authorized to act on behalf of LPG. Any

132

participation that you had with Mr. Diab may constitute aiding and abetting the unauthorized practice of law, and may be actionable on both civil and criminal grounds; you should seek the advice of an attorney regarding the same.

You have been placed on notice. Govern your conduct accordingly.

Regards,

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

# Exhibit "A-2"



**Wick Phillips**

Rusty J. O'Kane
(214) 740-4039 Direct Dial
rusty_okane@wickphillips.com
www.wickphillips.com

February 10, 2023

**VIA CMRRR 9314 8699 0430 0104 3217 91**
Rajinder P. Singh
Chairman, President, and
Chief Executive Officer
BankUnited, Inc.
14817 Oak Lane
Miami Lakes, Florida 33016
(305) 569-2000

**VIA CMRRR 9314 8699 0430 0104 3219 51**
Kevin Malcolm
General Counsel
BankUnited, Inc.
14817 Oak Lane
Miami Lakes, Florida 33016
(305) 569-2000

> **Re:** **Cease and Desist and Revocation of Authority for Debits on Behalf of Oakstone Law Group, PC and its affiliates (together, "Oakstone")**

Dear Messrs. Singh and Malcolm:

We represent Oakstone in connection with its recent retention of certain accounts from Litigation Practice Group ("LPG"). LPG transferred its practice to Oakstone, which has taken over servicing clients to assist in reducing and eliminating their debt. To that end, LPG terminated BankUnited's relationship with these accounts on or around February 2, 2023. Upon termination, LPG withdrew any authorization to process automatic debits from any customer account, and such termination extended to Oakstone. Likewise, all Legal Services Agreements and Electronic Payment Authorizations between BankUnited and LPG were terminated and revoked. Oakstone, for its part, has never authorized BankUnited to debit any account on its behalf. In the event such terminations were not previously clear, we are reiterating that any such authorizations between clients of LPG/Oakstone and BankUnited are revoked and/or terminated. Despite this revocation, we have learned that BankUnited continues debiting client accounts without authorization.

Please take all immediate and necessary steps to cease taking automatic payments from any account associated with LPG or Oakstone. Attached is a spreadsheet identifying many of the accounts in question, although BankUnited should do an independent audit to ensure its compliance. This revocation applies to any and all future debits. These accounts total $5.2 million per month—damages we fully intend to pursue if unauthorized debits continue to occur.

Should you refuse or fail to honor these revocations, we have been authorized to take all available legal action, including filing a lawsuit seeking injunctive relief to stop BankUnited's intentional disruption of Oakstone's business and interference with its customer relationships. This letter should not be construed as a waiver of any duties, covenants, or obligations owing or owed by any party, and nothing herein shall release or discharge you from any liability.

If you have any questions or concerns, please feel free to contact me.

**Dallas** — 3131 McKinney Avenue, Suite 500 • Dallas, Texas 75204 • 214.692.6200 • 214.692.6255 Fax
**Fort Worth** — 100 Throckmorton, Suite 1500 • Fort Worth, Texas 76102 • 817.332.7788 • 817.332.7789 Fax
**Austin** — 7004 Bee Caves Road, Bldg. 1, Suite 1100 • Austin, Texas 78746 • 512.681.3732 • 512.681.3741 Fax

135

February 10, 2023
Page 2

Sincerely,

Rusty O'Kane

cc:     hd@marichbein.com
        israel@marichbein.com
        max@marichbein.com

# Exhibit "A-2" attachment

*(to be submitted in camera)*

# Exhibit "A-3"

From: <support@oakstonepc.com>
Date: Tue, Feb 7, 2023 at 1:32 PM
Subject: Fwd: LPG charge unauthorized
To: <admin@guardianprocessing.com>
Cc: <operations@guardianprocessing.com>, <eng@guardianprocessing.com>, <wes@guardianprocessing.com>

9810 - Melissa ▮▮▮▮▮▮▮▮▮▮

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/9810

> On Tue, 7 Feb at 4:32 PM , Melissa ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:
> Here is the charge from  LPG on Feb. 6th.

Attachments:

- Screenshot_20230207_162846_Mascoma Bank.jpg

From: ████████████████████
Date: Tue, Feb 7, 2023 at 12:04 PM
Subject: Reversal of Payment for Sharonda ████
To: <support@oakstonepc.com>

Hello,
I was told by you all that my payments to the Litigation Practice Group were actually finished on 1/5/2023. LPG actually withdrew another $411 out of my account yesterday, and now I am overdrawn on my account and have accrued several overdraft fees due to my lack of knowledge that the payment was taken out anyway. I was told to screen shot the payment to you all to get some help getting this payment reversed. Bank United also was not able to reverse anything for me and I was directed back to the LPG group by my banking institution. Can someone please help me?

Thank you,
Sharonda
████████████

Sent from my T-Mobile 4G LTE Device

141

## Menu

**Zing**
Credit Union

Mart Super Center 4198 WAL... ($138.65)

**FEB 6 2023**

Withdrawal Check Pay Fee | **($33.00)** | ⋮
| ($68.65) |

**FEB 6 2023**

Withdrawal ACH LPG ▮▮▮▮▮▮▮ | **($411.09)** | ⋮
▮▮▮ *DIRECT PAY | ($35.65) | ⋮

---

### Details

**Statement Description:**
Withdrawal ACH LPG ▮▮▮▮▮▮▮▮*DIRECT PAY

**Date:**
2/6/2023

**Type:**
Debit

---

**FEB 6 2023**

Withdrawal Check Pay Fee LPG ▮▮▮ | **($33.00)** | ⋮
▮▮▮▮▮▮ *DIRECT PAY | $375.44 | ⋮

**FEB 6 2023**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮ | ⋮
| ▮▮▮ |

**FEB 5 2023**

▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮ | ⋮
▮▮ ▮▮ | ▮▮▮ |

**FEB 5 2023**

▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮ | ⋮
▮▮▮▮▮▮▮▮▮ | ▮▮▮ |

 Gmail

**GP Admin <admin@guardianprocessing.com>**

## Fwd: Antonia Martinez-Refund
1 me   age

**support@oakstonepc.com** <support@oakstonepc.com>                                    Tue, Feb 7, 2023 at 3:02 PM
Reply-To: support@oakstonepc.com
To admin@guardianproce    ing com
Cc: operations@guardianprocessing.com, eng@guardianprocessing.com, wes@guardianprocessing.com

9854 - Toni

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/9854

On Tue, 7 Feb at 6 02 PM , Toni                                               wrote
image png
image png

**Toni**
2720 Albon Rd.
Maumee, OH 43537
*Account Receivable*
**Direct:** (419) 724-5031
**Fax:** 419-865-0368

**Elizabeth Scott**

Attachments:

- recording of Calls.xlsx
- Xerox Scan_01312023055527 (2).pdf

**From: Toni** ███████████████████
**Date:** Tue, Feb 7, 2023 at 3:02 PM
**Subject:** Antonia ████████ -Refund
**To:** support@oakstonepc.com <support@oakstonepc.com>



‹  Transaction Details

-$274.91

ACH/LPG ███████████

Activity Occurred on 2/6/2023

| Secondary Description | DIRECT PAY |
| --- | --- |
| Posted On | 2/6/2023 |
| Resulting Balance | -$222.90 |
| Type | ACH |

Page will timeout in 14:56



**Toni** ████████████

%7<75%Fggts%Wi%

%R fzr jjETM%98:8<%

Fhhtzsy%Wjhjn{fgqj%

%Inwjhy%96>.%792 586%

%Kf}%96>2=;:58;=%

████████████████%



%

%

From: Aaron ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Date: Mon, Feb 6, 2023 at 8:15 AM
Subject: Fwd: Oakstone Law Group PC
To: <support@oakstonepc.com>

Hello payment,

There's mistake to this month payment.
I was charged on Friday 2/3/23 & Monday 2/6/23. Please advise

Processing

ACH HOLD Monthly Legal S
Monthly Le ON 02/06

Processing

Feb 3, 2023
LPG ███████████████
DES:DIRECT PAY
ID:███████████████████
INDN:█████████████████
ID:██████████████████

Sent from my iPhone

On Feb 2, 2023, at 3:07 PM, Oakstone Law Group PC <support@oakstonepc.com> wrote:



Hi Aaron  !

Welcome to Oakstone Law Group! Thank you for entrusting us to work with you to achieve your goal of financial freedom.

As part of the transition, please authenticate your payment method using the link here:

Link

Please be advised that you won't be charged until your normal scheduled payment as part of the original legal services agreement.

Please contact us at +1858-330-3009 if you have any questions or email us at support@oakstonepc.com

Thank You!

Support Team,

Oakstone Law Group

From: Teresa ██████████████████
Date: Wed, Feb 8, 2023 at 9:32 AM
Subject: Overdraft fee and double charge
To: support@oakstonepc.com <support@oakstonepc.com>

Get Outlook for iOS

🔍 keyword, amount, or mm/dd/y... 📅

## Feb 7

MONTHLY LEGAL SERV WWW.OAKSTONEPCA          -$355.73




## Feb 6

ACH Transaction -



ACH Transaction -


## Feb 3

ACH Transaction - LPG
████████████ DIRECT PAY          -$355.73

## Feb 2

🔍 keyword, amount, or mm/dd/y... 📅

## Feb 7

Overdraft Protection Fee     -$20.00

 

POS Debit - ▮▮▮▮ -
MONTHLY
LEGAL SERV    -$355.73
WWW.OAKSTONEPCA



## Feb 6

ACH Transaction -


tion -


From: **Linda** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Date: Fri, Feb 3, 2023 at 2:46 PM
Subject: Re: Oakstone Law Group PC
To: Oakstone Law Group PC <oakstonelawgrouppc+a3ubsh7@guardianprocessing.freshworksmail.com>,
support@oakstonepc.com <support@oakstonepc.com>

Re: Linda ▓▓▓▓▓▓▓▓▓▓

Good evening. I'm glad I received a phone call letting me know your company took over my account.

I hope LPG transfers the Feb 2023 payment to you because I don't have any available funds to make a double payment.

I also hope you actually have someone that replies to emails and texts. Someone that does things. I've seen nothing but my score go from the mid 500's down into the 400's. So bad I had to have my friend purchase a car in her name and me drive and insure/ make payments. No discussion, guidance, nothing. In this mess because of my husband. He can't have anything in his name but sure had no trouble running my name up.

Not that I didn't try to contact LPG, never a reply. Or the generic contact us at....

Thanks for listening.

Linda ▓▓▓▓▓

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Oakstone Law Group PC <support@oakstonepc.com>
**Sent:** Friday, February 3, 2023 2:37:29 PM
**To:** Linda ▓▓▓▓▓▓▓▓▓▓
**Subject:** Oakstone Law Group PC



Hi Linda ██████ !

Welcome to Oakstone Law Group! Thank you for entrusting us to work with you to achieve your goal of financial freedom.

As part of the transition, please authenticate your payment method using the link here:

[Link](#)

Please be advised that you won't be charged until your normal scheduled payment as part of the original legal services agreement.

Please contact us at +1858-330-3009 if you have any questions or email us at support@oakstonepc.com

Thank You!

Support Team,

Oakstone Law Group

From: Jeffrey ███████████████████████ ▬

Date: Fri, Feb 10, 2023 at 12:37 PM

Subject: Double charged on monthly payment

To: Support@oakstonepc.com <Support@oakstonepc.com>


My name is Jeffrey ███████ and I was recently charged twice for my February services with the Litigation Practice Group

Feb. 6th 383.12

Feb. 7th 383.12

I am enclosing copies of my bank statements for the days of occurrence.

I would kindly appreciate a refund of 383.12 for the overcharged.

Overdraft fees are now covered.

Thank you for your attention to this matter, I cannot afford to pay all my bills this month, because of this error.



# External Withdrawal LPG

████████████████ - DIRECT PAY

FEB 06, 2023



FEB 05, 2023



FEB 05, 2023



## Overdraft Protection Deposit

FEB 07, 2023

## External Withdrawal LPG

██████████████ - Legal Serv LPG

████████████

FEB 07, 2023



Point Of Sale Withdrawal TOWER

3

155

Sent from Yahoo Mail on Android

From: Kathy ███████████████████
Date: Wed, Feb 8, 2023 at 10:17 AM
Subject: Re: double payment taken
To: Oakstone Law Group PC <support@oakstonepc.com>



# Account History

ACH Withdrawal / LPG

-$353.39

DIRECT PAY



# FREE CHECKING █████

**Available** $318.02

Current $318.02

## SHOW DETAILS

## Pending

*ACH Withdrawal /*
*Monthly Legal*
*Se* █████████

*Monthly Le WEB*
████████████

*PENDING*

-$353.39

## Posted

sorry i only know how to do it this way. your looking at the $353 amount. Thanks for you immediate attention on this matter.


Have a smiley day!
Kathy E██████

Ts% ji▨Kjg%-▨7578%fy%5%>%FR ▨ffpxytsj%Qf| %wtzu%UH%
Axzuutw%E tfpxytsjuh3htr C% wtyj%

Hi Kathy ██████

We are more than happy to provide further assistance on this matter, please email a reflection of the charges to support@oakstonepc.com. Please get in touch with us if you have any questions or concerns. Our phone number is (858) 330-3009 and our hours of operations are Monday to Friday, from 6 am - 6 pm PST.



On Wed, 8 Feb at 2:10 AM , Kathy ████████████████████████████ wrote:
hi, it appears you guys are trying to take another payment out of my banking account. fix this asap please so I don't get a NSF charge or I'll expect you to cover any and all that may occur.


Have a smiley day!
Kathy E██████

From: <support@oakstonepc.com>
Date: Fri, Feb 10, 2023 at 1:31 PM
Subject: Fwd: Double payment
To: <admin@guardianprocessing.com>
Cc: <operations@guardianprocessing.com>, <eng@guardianprocessing.com>, <wes@guardianprocessing.com>

10393 - Roger ▮ ()

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/10393

On Fri, 10 Feb at 4:31 PM , Roger ▮ ▮ wrote:
Need one of the payments to go back in my acct put me in negative  and I also paid the draft fees

Attachments:

- 20230210_095603.jpg

From: support@oakstonepc.com
Date: Friday, February 10 2023 at 1:24 PM PST
Subject: Fwd: Nicole ▮ refund request
To: admin@guardianprocessing.com
Cc: operations@guardianprocessing.com, eng@guardianprocessing.com, wes@guardianprocessing.com

10391 - Nicole ▮ 0

Client was double charged and requires urgent refund for erroneous payment.
Please have an agent reach out to the client for reassurance.

https://oakstonepc.freshdesk.com/helpdesk/tickets/10391

On Fri, 10 Feb at 4:24 PM , Nicole ▮ wrote:

Attachments:

- Screenshot_20230210_143539_Carolina Foothills.jpg

From: **Sherri** ███ █████████████████

Date: Tue, Feb 7, 2023, 5:25 PM

Subject: Possible refund

To: <<u>support@oakstonelawpc.com</u>>

I hope this works.  My internet is not working so I couldn't take a picture that way.

I am on disability and taking that money out every month was killing me.

Sherri



Attachments:

- <u>20230207_171717.jpg</u>

Please take a look at ticket #10115 raised by W. F. K. H. █████████████

On Thu, 9 Feb at 11:26 AM , W. F. K. H. ██████████████ wrote:
PLEASE REFUND TRANSACTION ERROR. MY ACCOUNT IS OVERDRAFT

Attachments:

- Screenshot_20230209_111458_Wells Fargo.jpg

Please take a look at ticket #10118 raised by Charles ███ ███████████████

On Thu, 9 Feb at 11:58 AM , Charles ████ ██████████████████ wrote:
I understand my account was sold to Oakstone Law Group. You took an unauthorized payment of $819.25 from my account on 2-7-23. My payment needs to be refunded to my account. Payment to Oakstone should be $694.25.
Please refund my payment promptly, so Oakstone can receive their payment.

Charles ████

Attachments:

- LPG payment 2-7-23.pdf

Please take a look at ticket #10363 raised by LINDA ███████████████████



    On Fri, 10 Feb at 2:43 PM , LINDA ████ ████████████████ wrote:

Begin forwarded message:

        **From:** LINDA ████ ████████████████
        **Date:** February 9, 2023 at 10:21:20 AM EST
        **To:** support@lpglaw.com
        **Subject: Monthly payment**

      As you can see from my email, I took a screenshot of my checking account that you guys took my monthly payment twice this month and I need that money put back into my account, I still have to pay my car note. By taking my monthly payment twice you have made my account negative. Please take care of this matter today so I can pay my car note! I have tried sending multiple emails and calls that after 10 minutes on hold the call drops. I need this taken care of today!!!

# Exhibit "A-4"

*(to be submitted in camera)*

# Exhibit "B"

CAUSE NO. _____

| | | |
|---|---|---|
| OAKSTONE LAW GROUP, PC | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| BANKUNITED, N.A. | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF RUSTY O'KANE</u>

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) ss.: |
| COUNTY OF DALLAS | ) |

**RUSTY O'KANE**, being duly sworn, deposes and says:

1.      My name is Rusty O'Kane. I am over eighteen (18) years of age, competent, of sound mind, and authorized to make this affidavit. The statements contained herein are within my personal knowledge and true and correct.

2.      I am a partner with the law firm of Wick Phillips Gould & Martin LLP ("<u>Wick Phillips</u>"), and counsel for Oakstone Law Group, PC ("Oakstone" or "Plaintiff"), Plaintiff in the above-captioned action. I make this affidavit in support of Plaintiff's Verified Original Petition; Application for Temporary Restraining Order; and Application for Temporary and Permanent Relief (the "Petition") against Defendant BankUnited, N.A. ("BankUnited") (collectively, "Defendants").

3.      I am an attorney at law duly admitted and licensed to practice before the courts of the State of Texas and have been so licensed since November 2013. I am also admitted and licensed to practice before the courts of the State of Illinois and have been so licensed since December 2010. In addition, I am licensed to practice in the United States Court of Appeals for the Fifth

Circuit; the United States District Courts for the Northern, Eastern, Southern, and Western Districts of Texas; and the United States District Court for the Northern District of Illinois. In addition, I am certified by the Texas Board of Legal Specialization in Civil Appellate Law.

4.      Attached to the Complaint as **Exhibit A-2** is a true and correct copy of correspondence, dated February 10, 2023, I sent to BankUnited on behalf of Oakstone reiterating that any authorization between clients of LPG/Oakstone and BankUnited was revoked and/or terminated. Attached to my letter, I included a list of Oakstone's client accounts, which has been excluded from the filing for privacy and confidentiality.

5.      Attached hereto as **Exhibit B-1** is a true and correct copy of correspondence, dated February 13, 2023, I received from counsel for Marich Bein, LLC.

6.      Attached hereto as **Exhibit B-2** is a true and correct copy of email correspondence, dated February 13-15, 2023, I sent to counsel for Marich Bein, LLC requesting documentation of any alleged transfer to LPG to Marich Bein, LLC and any evidence of an exclusive and non-cancellable right to service customer accounts. To date, I have not received any further written response to this email.

7.      In my position as an attorney for Wick Phillips, I am a custodian of records at Wick Phillips, and, as such, am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. The Records attached hereto as **Exhibits A-2, B-1 and B-2** (the "Records"), respectively, are kept by Wick Phillips in the regular course of its business. It was the regular course of business of Wick Phillips for an employee or representative of Wick Phillips with knowledge of the act, event, condition, or opinion recorded to make the Records or to transmit information thereof to be included in such Records.

8.      These Records were (1) made as a memorandum or record of an act, transaction, occurrence or event; (2) made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter; (3) kept in the ordinary course of a regularly conducted business activity; and (4) it was a regular practice of that business to make such a record.

9.      The Records produced or otherwise created or kept by Wick Phillips, including myself, are true and correct copies of the originals or exact duplicates of the originals. As custodian of records for Wick Phillips, I hereby certify that the referenced documents reflect true and correct copies of the Records listed above.

WHEREFORE, for all these reasons, and those included in the Complaint, Oakstone's motion for a temporary restraining order and preliminary injunction should be granted in its entirety, and Oakstone should be granted such other and further relief as is just and proper.

Executed on February 15, 2023.

_____
RUSTY O'KANE

Sworn to before me this
15th day of February 2023

_____
Notary Public

LASHUNDRA GARLON
Notary Public, State of Texas
Comm. Expires 10-04-2025
Notary ID 133368960

**AFFIDAVIT OF RUSTY O'KANE**                                                                 PAGE 4

# Exhibit "B-1"



Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone: 212-415-8600
Fax: 212-303-2754
www.lockelord.com

Shalom Jacob
Direct Telephone: 212-415-8618
sjacob@lockelord.com

February 13, 2023

By Email and FedEx:

Rusty J. O'Kane, Esq.
Wick Phillips
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204

Re:     Oakstone Law Group, PC and Affiliates ("Oakstone")

Dear Mr. O'Kane:

We represent Marich Bein LLC ("Marich Bein") and write concerning your February 10, 2023 letter to BankUnited, Inc.

To the extent that the allegations in your letter are directed against Marich Bein, they are incorrect and/or irrelevant.

Be advised that Litigation Practice Group ("LPG") assigned, sold and conveyed certain accounts to Marich Bein (the "Assigned Accounts"). The Assigned Accounts are the exclusive property of Marich Bein. A review of the account list attached to your letter is ongoing. However, at this point it is clear that many of the accounts therein are Assigned Accounts that are the exclusive property of Marich Bein.

Be further advised that LPG assigned to Marich Bein the exclusive right to service not just the Assigned Accounts but all LPG accounts. The assignment prohibited LPG from transferring its accounts and included the exclusive right to debit LPG's customers' bank accounts. Oakstone must immediately cease and desist from debiting the Assigned Accounts and all other LPG accounts and turn over to Marich Bein for further handling all funds that Oakstone may have been obtained in connection with such accounts. Further, should Oakstone have caused or hereafter cause any customer's bank account to be double debited, Oakstone will be responsible for any damages that any customer may suffer.

Marich Bein demands that Oakstone immediately retract your letter to BankUnited, Inc. and that you make appropriate inquiry of Oakstone. If Oakstone disagrees with any of the foregoing, provide us with documentation to support its position.

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

Rusty J. O'Kane
February 10, 2023
Page 2

To the extent your actions interfere with the lawful actions of Marich Bein, it reserves all rights, at law or in equity, to pursue appropriate redress. Govern yourself accordingly.

Very truly yours,

Shalom Jacob

# Exhibit "B-2"

# Alexandra Wahl

| | |
|---|---|
| **From:** | Rusty O'Kane |
| **Sent:** | Wednesday, February 15, 2023 1:10 PM |
| **To:** | Katz, Alan; Frechette, Donald; Jacob, Shalom |
| **Cc:** | Alexandra Wahl |
| **Subject:** | RE: [External] Oakstone Law Group and Affiliates |

Gentlemen,

Thank you again for the call this morning. As a follow up to our conversation, we again request (for the third time) that Marich Bein provide any proof it purchased and/or acquired a non-terminable, exclusive right to withdraw payments from the list of client accounts (attached to my letter) prior to January 11, 2023. Due to Marich Bein's continued debits of these accounts, Oakstone is unable to collect over $600,000 in fees today for legal services it rendered from those clients and continues to receive notifications of clients cancelling their subscriptions due to the double-billing. If this continues, Oakstone will be forced to fire its employees and close its doors next week. As such, this needs to be resolved today or we will be forced to pursue court intervention.

Please let me know if you have any questions or need further documentation from us.

Thank you,
Rusty

**Rusty O'Kane**
Partner | Wick Phillips
Direct: 214.740.4039
Mobile: 302.547.7898
rusty.okane@wickphillips.com

**From:** Rusty O'Kane <rusty.okane@wickphillips.com>
**Sent:** Monday, February 13, 2023 2:34 PM
**To:** Katz, Alan <akatz@lockelord.com>
**Cc:** Alexandra Wahl <Alex.Wahl@WickPhillips.com>
**Subject:** RE: [External] Oakstone Law Group and Affiliates

Alan,

I'll respond more substantively to your letter under separate cover. In the meantime, the statements in your letter are news to me, so I wanted to reach out to make sure we were operating from the same set of facts. Once you've had a chance to review the customer accounts I attached to my letter, we can have a more informed discussion. In the meantime, Do you have a copy of whatever transfer document exists showing that LPG "assigned, sold and conveyed certain accounts to Marich Bein," as stated in your letter? Or that LPG gave Marich Bein the exclusive and non-cancellable right to service all LPG customer accounts? I have not seen any document to that effect, so if you have something like that, would you please send to me? In the interest of full transparency, the attached documents show that LPG terminated Marich Bein's right to process payments for the client accounts at issue on February 6, 2023. Similarly, on February 2, LPG terminated its relationship with Toni Martinez regarding these client accounts. If you have some document that says such termination and revocation was impermissible, please send to me and I will review it.

Thank you,
Rusty



Rusty O'Kane | Partner

Board Certified by Texas Board of Legal Specialization
*Civil Appellate Law*

3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Direct: 214.740.4039 | Mobile:302.547.7898
Fax:    214.692.6255
www.wickphillips.com



---

**From:** Katz, Alan <akatz@lockelord.com>
**Sent:** Monday, February 13, 2023 1:01 PM
**To:** Rusty O'Kane <rusty.okane@wickphillips.com>
**Subject:** [External] Oakstone Law Group and Affiliates

Please see the attached correspondence.

Alan H. Katz
Of Counsel
**Locke Lord LLP**
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
212-415-8509
504-909-2526 (cell)
212-812-8380 (fax)



---

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information, including our privacy notices and policies, visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.